Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 16, 2004        Decided July 20, 2004

No. 03-7076

FRATERNAL ORDER OF POLICE DEPARTMENT OF
CORRECTIONS LABOR COMMITTEE, *ET AL.*,
APPELLANTS

v.

ANTHONY A. WILLIAMS, MAYOR,
DISTRICT OF COLUMBIA, *ET AL.*,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00461)

*Joshua D. McInerney* argued the cause for the appellants.
*James F. Wallington* was on brief.

*William J. Earl*, Assistant Attorney General, District of
Columbia argued the cause for the appellees. *Robert J.*

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

*Spagnoletti*, Attorney General, District of Columba, and *Edward E. Schwab*, Assistant Attorney General, were on brief.

Before: HENDERSON, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: The Fraternal Order of Police/Department of Corrections Labor Committee, its chairman and two member correctional officers (collectively the Union) appeal the district court's dismissal of their complaint brought under 42 U.S.C. § 1983 against the District of Columbia (District) and two District officials, Mayor Anthony J. Williams (Mayor) and District of Columbia Director of Corrections Odie Washington (DOC Director). The Union claims that the two officials acted with deliberate indifference to the safety of District correctional officers when they laid off several hundred of them at the same time they added to the number of inmates housed at the District's Central Detention Facility (D.C. Jail or Jail). The Union contends that its claim arises under the "State endangerment concept" recognized by this court in *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). We disagree and affirm the district court's judgment albeit in a different procedural form.

## I.

In 1997, the Congress passed the National Capital Revitalization and Self–Government Improvement Act, which called for, among other things, closure of the District's Lorton Correction Complex by December 31, 2001. Pub. L. No. 105–33, § 11201(b), 111 Stat. 251, 734; *see* D.C. Code Ann. § 24–101(b). Pursuant to that statute, District officials in late 2001 notified the Union that it intended to transfer a significant number of inmates from Lorton to the D.C. Jail. At roughly the same time, in December 2001 and February 2002, and in response to both fiscal year 2002 congressional appropriations for the DOC and the "surplus" of correctional officers following Lorton's closing, the Mayor approved a series of reduc-

tions-in-force (RIFs) decreasing the total number of correctional officers in the District's employ.

The Union opposed the RIFs and also claimed that the District, by transferring Lorton prisoners to the D.C. Jail, was violating a court-ordered ceiling on the number of inmates who could be housed at the Jail, *see Campbell v. McGruder*, 416 F. Supp. 111, 117 (D.D.C. 1976), *aff'd*, 580 F.2d 521 (D.C. Cir. 1978) – an order that was lifted by the time of the district court's decision here, *see Campbell v. McGruder*, 86 Fed. Appx. 426, 2004 WL 180423 (D.C. Cir. Jan. 23, 2004). – and adding to ongoing unhealthy and dangerous working conditions at the Jail. It filed an administrative complaint with the District's Public Employee Relations Board and in March 2002 filed suit in federal court pursuant to 42 U.S.C. § 1983. It claimed that the Mayor and the DOC Director, by increasing the number of inmates at the Jail while decreasing the number of correctional officers there, affirmatively subjected correctional officers to an increased likelihood of inmate assaults in violation of their Fifth Amendment right to Due Process and their entitlement to a safe and sanitary work environment as recognized in D.C. Code Ann. § 32–1103(a).[1] The Union sought injunctive relief: namely an order prohibiting the RIFs and requiring the District to improve the showers and ventilation system at the Jail.

In connection with the Union's requests for a temporary restraining order (granted) and a preliminary injunction (denied), the parties submitted numerous affidavits, declarations and exhibits. The District then moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that the district court lacked subject matter

---

[1] Section 32–1103(a) provides that an "employer shall: (1) furnish employees with a place and conditions of employment that are free from recognized hazards that may cause or are likely to cause death or serious physical harm or illness to the employees; and (2) comply with all occupational safety and health rules." D.C. Code Ann. § 32–1103(a). Section 32–1101(6) provides that "[t]he term 'employer' shall include a District government or quasi-governmental agency." D.C. Code § 32–1101(6).

jurisdiction. Joint Appendix (JA) 142. The Union countered with additional evidence of the allegedly dangerous conditions at the Jail, relying on *Butera* and the right to be provided with a safe workplace and conditions of employment. The District responded that, even under *Butera*, the Union failed to assert an injury in fact or a constitutional claim because its member correctional officers had voluntarily exposed themselves to any alleged endangerment by accepting employment with the District.

In May 2003, the district court granted the District's motion. *Fraternal Order of Police, Dep't of Corrections Labor Comm. v. Williams*, 263 F. Supp. 2d 45 (D.D.C. 2003).[2] Assuming that District officials could be held liable either for staffing policies in response to shortfalls in congressional appropriations or for the Congress's decision to close Lorton, the court found that "[n]othing presented by the [Union] is so egregious that, as a matter of law, it shocks the conscience." *Id.* at 47. The court further noted that the United States Supreme Court in *Collins v. City of Harker Heights*, 503 U.S. 115, 128–29 (1992), expressly rejected the notion that the Due Process Clause protects a municipal employee's interest in a safe work environment and that this court in *Washington v. District of Columbia*, 802 F.2d 1478, 1482 (D.C. Cir. 1986), rejected a prison guard's similar claim. *See Fraternal Order of Police*, 263 F. Supp. 2d at 48. The court then declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the Union's remaining state law claims. *Id.* The Union appeals the dismissal.

---

[2] The district court order does not make explicit the basis of the dismissal. *See Fraternal Order of Police*, 263 F. Supp. 2d at 46–48. Nonetheless, it alludes to the District's argument that it "lack[ed] subject matter jurisdiction over [the Union's] alleged federal claim because there is no government duty protected by substantive due process to provide its employees minimal levels of safety and security in the workplace." *Id.*, at 47. Moreover, as noted, the District moved to dismiss "pursuant to Federal Rule of Civil Procedure 12(b)(1)." JA 142. We therefore view the district court's judgment as a dismissal pursuant to Rule 12(b)(1).

## II.

The District moved to dismiss the Union's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and the district court granted the motion. In so concluding, the court erred. The district court had jurisdiction to hear the Union's complaint brought pursuant to 42 U.S.C. § 1983 because, as the Supreme Court explained in *Bell v. Hood*, 327 U.S. 678, 681 (1946), the complaint sought "recovery directly under the Constitution or laws of the United States." *See* 28 U.S.C. § 1343; *Yates v. Dist. of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (per curiam); *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994). Having sought such recovery, the Union's complaint could be dismissed under Rule 12(b)*(1)* only if it was "wholly insubstantial and frivolous" or "so patently without merit as to justify . . . the court's dismissal for want of jurisdiction." *Bell*, 327 U.S. at 682-83; *see Best*, 39 F.3d at 330. We do not believe the Union's claim can be so viewed. Instead, the complaint was subject to dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Bell*, 327 U.S. at 682; *Yates*, 324 F.3d at 725. The substance of the District's motion was that the Union had failed to state a claim actionable under section 1983.[3] Because both parties submitted materials outside the pleadings and the court relied on those materials in concluding that the Union had failed to state a claim, the motion to dismiss should have been converted to a summary judgment motion under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(b) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion

---

[3] Indeed, District counsel at one point so characterized the motion before the district court: "[T]he case is before the [c]ourt on basically a 12(b)(6) motion." JA at 236; *see also Reply to Plaintiffs' Supplemental Response to Defendants' Motion to Dismiss*, JA at 193 ("The thrust of [the District's] motion to dismiss is that the [Union] and its members do not have a substantive due process right that would compel the District . . . to hire additional employees to staff the [D.C.] Jail in order to address what, they assert, is an unreasonably dangerous workplace.")

shall be treated as one for summary judgment."); *Yates*, 324 F.3d at 725 (parties' submissions and court's consideration of matters outside pleadings "had the effect of converting the Rule 12 motion . . . into a motion for summary judgment"). We may, however, "characterize[ ]" the district court's dismissal as a grant of summary judgment under Rule 56(c) and affirm. *Mazaleski v. Treusdell*, 562 F.2d 701, 708 (D.C. Cir. 1977) (treating district court's dismissal "for failure to state a claim over which it had jurisdiction" as "a summary judgment [when] both parties had presented affidavits and other materials 'outside the pleading', these were expressly considered by the court, and it is clear from the [court's decision] that an intended, albeit unarticulated, ground for dismissal was Rule 12(b)(6)" (quoting Fed. R. Civ. P. 12(b))); *see Yates*, 324 F.3d at 726 ("resulting order" from motion to dismiss "must be treated [on appeal] as a grant of summary judgment under Rule 56" because "parties submitted, and [court] considered, matters outside the pleadings"). We may do so, however, only if the "pleadings and record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1041 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). We conclude that there is no genuine issue of material fact and that the District defendants are entitled to judgment as a matter of law.

On appeal the Union focuses on *Butera*'s "State endangerment concept." 235 F.3d at 651. In *Butera* we declared that "an individual can assert a substantive due process right to protection by the District of Columbia from third-party violence when District of Columbia officials affirmatively act to increase the danger that ultimately results in the individual's harm." *Id.* But *Butera* cautioned that "[t]o assert a substantive due process violation, the plaintiff must also show that the District of Columbia's conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The Union contends that it demonstrated sufficiently conscience-shocking action

by District officials in alleging that the Mayor and the DOC Director failed to heed not only the now-vacated, court-ordered inmate population ceiling but also a November 2001 internal DOC staffing memorandum allegedly indicating a need for more correctional officers, a September 2000 National Institute of Occupational Safety and Health report identifying health hazards at the Jail, and an alleged rise in the number of inmate assaults on correctional officers. We disagree and decline to extend *Butera* – a case involving the death of a police informant turned undercover operative – to the Union's challenge to the inmate/guard ratio at the D.C. Jail. 235 F.3d at 641-43.

The challenged acts of the Mayor and the DOC Director – implementing RIFs and relocating prisoners to another detention facility in response to congressional appropriations and mandates – in no way approach the "cognizable level of executive abuse of power as that which shocks the conscience." *Lewis*, 523 U.S. at 846. The conscience-shock inquiry is a "threshold question" "in a due process challenge to executive action." *Id.* at 847 n.8; *see id*. at 846 ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" (quoting *Collins*, 503 U.S. at 129)). It is a "stringent requirement" that "exists to differentiate substantive due process . . . from local tort law," *Butera*, 235 F.3d at 651; *see Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (noting that "many state activities have the potential for creating some danger–as is true of most human endeavors – but not all such activities constitute a 'special' danger giving rise to § 1983 liability"); *see also Pinder v. Johnson*, 54 F.3d 1169, 1178 (4th Cir. 1995) (declining to recognize "broad" substantive due process claim "to affirmative protection from the state" because it "would be first step down the slippery slope of liability"); and recognizes the "presumption that the administration of government programs" and "[d]ecisions concerning the allocation of resources" are "based on a rational decisionmaking process that takes account of competing social, political, and economic forces." *Collins*, 503 U.S. at 128. It is "conduct intended to injure in some way unjustifiable by any government interest" – and not such large-scale person-

nel and program decisions as relocation of inmates and reallocation of correctional officers resulting therefrom, made by officials at the highest level of the District government in response to congressional directives and appropriations – that "is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)); *see Collins*, 503 U.S. at 129 ("The Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions.' " (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976))); *id.* ("The United States Constitution cannot feasibly be construed to require federal judicial review for every . . . error" involving "the multitude of personnel decisions that are made daily by public agencies.").

The Union contends that it meets the "shocks the conscience" test because it alleges that the Mayor and the DOC Director "had the luxury to make unhurried judgments concerning the ratio of [c]orrectional [o]fficer staffing to inmate population" and instead acted with "deliberate indifference" to the safety and security of the correctional officers. Appellants' Br. at 24. As we explained in *Butera*, however, the "lower threshold" for meeting the shock the conscience test by showing deliberately indifferent as opposed to intentional conduct applies only in "circumstances where the State has a heightened obligation toward the individual." 235 F.3d at 651; *see Lewis*, 523 U.S. at 850 ("Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."); *Daniels*, 474 U.S. at 331 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property." (emphasis in original) (citations omitted)). Such a circumstance occurs, for example, "when the State takes a person into its custody and holds him there against his will" – "the Constitution imposes . . . a corresponding duty [on the State] to assume some responsibility for his safety and general well-being" because "it ren-

ders him unable to care for himself." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). The opportunity for deliberation alone is not sufficient to apply the lower threshold to substantive due process claims. Instead, it is "[b]ecause of . . . special circumstances" like custody that "a State official's deliberate indifference . . . can be 'truly shocking.'" *Butera*, 235 F.3d at 652; *see Lewis*, 523 U.S. at 853 ("[L]iability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.").

The Union does not argue that similar special circumstances exist with regard to correctional officers and our precedent holds otherwise. As the district court observed, *Fraternal Order of Police*, 263 F. Supp. 2d at 48, we have previously rejected a prison guard's substantive due process claim based on the alleged danger resulting from overcrowding and a shortage of guards.[4] *See Washington*, 802 F.2d at 1480-81. In doing so, we noted the difference in circumstances between a prison *inmate* and a prison *guard*:

> Prison guards, unlike the prisoners in their charge, are not held in state custody. Their decision to work as guards is voluntary. If they deem the terms of their employment unsatisfactory, *e.g.*, if salary, promotion prospects, or safety are inadequate, they may seek employment elsewhere. The state did not force [the plain-

---

[4] In *Washington*, the plaintiff guard had in fact been injured by an inmate. 802 F.2d at 1479. Here the District argued that none of the plaintiffs had suffered an injury in fact, *see Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss* at JA 171, but the court did not reach the issue. In *Butera*, we stated only that "an *individual* can assert a substantive due process right to protection by the District of Columbia from third-party violence when District of Columbia officials affirmatively act to increase or create the danger *that ultimately results in the individual's harm*." 235 F.3d at 651 (emphasis added); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983).

tiff] to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that occupation.

*Id.* at 1482; *see Randolph v. Cervantes*, 130 F.3d 727, 730-31 (5th Cir. 1997) (rejecting substantive due process claim brought by mother of injured resident of state mental health center where state officials "allowed and encouraged [the resident] to voluntarily reside at [the center] . . . having the right to come and go from the premises at any time"); *see also Butera*, 235 F.3d at 651 n.16 (noting but not deciding "whether the possibly voluntary nature of [undercover police operative's] conduct would relieve or mitigate [sic] the District of Columbia of constitutional liability"). Furthermore, the Union has not demonstrated that an assault by an inmate is an *un*foreseeable risk of its members' employment. *See Uhlrig*, 64 F.3d at 575 & n.13 (rejecting substantive due process claim brought by widow of municipal therapist killed by mental patient because therapist was aware of "potential risk inherent in [her] job" and declining "on a more general level" to hold "public employers liable under § 1983 for dangers arising from [such] risk"); *see also Collins*, 503 U.S. at 128 (rejecting claim that municipal liability based on "alleged failure to train [municipal] employees, or to warn them about *known* risks of harm" could "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense" (emphasis added)).

Instead, the Union contends that the rationale of our *Washington* decision has been limited by the Supreme Court's decision in *Collins*. To be sure, *Collins* recognized that the Constitution "afford[s] protection to employees who serve the government as well as to those who are served by them, and [section] 1983 provides a cause of action for all citizens injured by an abridgement of those protections." 503 U.S. at 120. It also noted that the "employment relationship . . . is not of controlling significance" in a municipal employee's substantive due process claim. *Id.* at 119. But *Collins* rejected the claim, made by the widow of a city sanitation worker killed in the performance of his duties, that the Due Process Clause required the city to "provide its employees

with certain minimal levels of safety and security" "when it made, and [the worker] voluntarily accepted, an offer of employment." *Id.* at 127-28. Moreover, *Collins* expressly cautioned against allowing a substantive due process claim under section 1983 to " 'supplant traditional state-law tort' " and "employment" claims because, as noted above, "[d]ecisions concerning the allocation of resources to individual programs . . . and to particular aspects of those programs, . . . involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Id.* at 128-29 (quoting *Daniels*, 474 U.S. at 332); *see Uhlrig*, 64 F.3d at 576 (rejecting substantive due process claim against officials who "faced difficult allocational decisions precipitated by budgetary constraints, and even if their decisions created certain risks, . . . view[ing] them as within the province of policymakers who must balance competing concerns"). For the same reasons, we decline to interfere with the District's decisionmaking here.[5]

## III.

For the foregoing reasons, the judgment of the district court is affirmed and summary judgment is granted to the defendants pursuant to Federal Rule of Civil Procedure 56.

*So ordered.*

---

[5] To the extent the Union asserts a substantive due process right to a safe work environment, a claim it disavowed at oral argument but pressed below and in its reply brief, such a claim was rejected by the Supreme Court in *Collins*, 503 U.S. at 130 ("In sum, we conclude that the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace."), and by our court in *Washington*, 802 F.2d at 1482 ("Whatever [a prison guard]'s rights may be under state law, he has no constitutional right to a safe working environment.").