HEARST RADIO, Inc., v. FEDERAL COMMUNICATIONS COMMISSION.

No. 9599.

United States Court of Appeals
District of Columbia.

Argued Nov. 21, 1947.

Decided Jan. 12, 1948.

Mr. William J. Dempsey, of Washington, D. C., with whom Mr. Thomas P. Littlepage, Jr., of Washington, D. C., was on the brief, for appellant.

Mr. Benedict P. Cottone, General Counsel, Federal Communications Commission, of Washington D. C., with whom Mr. Harry M. Plotkin, Assistant General Counsel, Federal Communications Commission, Mr. Max Goldman, Assistant Chief, Litigation and Administration Division, Federal Communications Commission, and Mr. Richard A. Solomon, Counsel, Federal Communications Commission, all of Washington, D. C., were on the brief, for appellee.

Before EDGERTON, CLARK, and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellant is the owner and duly licensed operator of radio station WBAL. It brought a civil action under the Administrative Procedure Act[1] for a declaratory judgment[2] and incidental relief. The Dis-

[1] 60 Stat. 243, Act June 11, 1946, 5 U.S.C.A. § 1009(b).

[2] 48 Stat. 955, Act June 14, 1934, as amended, 28 U.S.C.A. § 400.

226

trict Court granted the defendant Commission's motion to dismiss. This appeal is from that judgment.

Under date of March 7, 1946, the Commission published a report entitled "Public Service Responsibility of Broadcast Licensees", commonly referred to as the "Blue Book". In one section of that report it said, "In recent years, the purchase of an existing standard broadcast station has become a more common means of entering broadcasting than the erection of a new station. The case of Station WBAL, Baltimore, illustrates the extent to which the service rendered by a station may be affected by a transfer or assignment of license to a purchaser, and the need for integrating Commission transfer and renewal procedures." Then followed what purported to be descriptions of the operation of the station when under the ownership of the Consolidated Gas, Electric Light and Power Company of Baltimore, and of its operation under the present owner. As a basis for the former, the Commission used "A Description of WBAL, Baltimore," prepared by the then-owner of the station for submission to the Commission in August, 1927, when the Commission was established and WBAL was seeking to procure a "cleared channel". For its description of the present operation of the station, the Commission used an analysis of the program logs of the station for the week beginning Sunday, April 23, 1944, with a corollary list of programs available to the station through the National Broadcasting Company.

In its complaint in the District Court, the present owner of WBAL alleged that the Blue Book has been the subject of widespread public discussion; that the statements in it tend to expose the present owner of WBAL to public shame, obloquy, contumely, odium, contempt, ridicule, aversion, degradation and disgrace, and tend to destroy the confidence of the public and those with whom the station does business in the radio industry and otherwise, in its ability to operate the station; that "The defamatory description * * * is a false and distorted misrepresentation based upon deliberate suppression of facts found in the Commission's own records"; and that the "improper condemnation" has resulted in direct damage and prejudice to the plaintiff. These general allegations were supported by specifications in detail. The plaintiff also alleged that its application for a renewal of its license is pending before the Commission, but that, as a result of the statements in the Blue Book, another applicant has applied for the license; that this latter application has been consolidated for hearing with the plaintiff's application for renewal; and that the outstanding charges in the Blue Book will result in severe prejudice to the plaintiff in proceedings on its renewal application.

■ The complaint contained three prayers. The second and third related to Commission consideration of the application for the renewal of the license. Obviously, judicial review of Commission action on the application for renewal must await such action. The District Court so held, and we agree.

■■ The first paragraph of the prayers, however, does not relate to the application for renewal, but prays that the court adjudge, by way of declaratory judgment, that appellant is entitled as a matter of legal right to a withdrawal of the unwarranted charges and misrepresentations contained in the Blue Book. Appellant's argument is that the charges in the Blue Book were false and known to be false, that they caused appellant damage, and that their publication, therefore, constituted a legal wrong; that Section 10(a) of the Administrative Procedure Act[3] gives the right to judicial review to any person suffering legal wrong because of any administrative agency action. The appellant argues that since no special statutory review proceeding is provided for action such as the publication of the Blue Book, it is entitled to bring an action for declaratory judgment, under the express provisions of Section 10(b) of the Act.

We agree with the appellant that this complaint pictures a legal wrong. The publication of misrepresentations, known to be false, which subject a person to public

---

[3] 5 U.S.C.A. § 1009(a).

shame and ridicule and cause him damage, is libel.[4] Whether the allegations in the complaint are true is not before us, but for the purposes of a motion to dismiss, they would, of course, be treated as true. Moreover, apart from the intrinsic accuracy of those allegations, it is obvious upon the face of the Blue Book itself that the comparison from which the Commission drew an unfavorable conclusion as to appellant's operation was unjustifiable. No sound conclusion can be drawn from a comparison between a promotional forecast by one person and the actual operation by another person for one selected week out of a period of eleven years.

The Commission says that the publication was not a legal wrong, because under the authorities the Commission is not liable for such an act. It cites the line of cases based upon Spalding v. Vilas.[5] But the theory of those cases is not that no wrong has been committed; the theory is that the public interest requires that officials be at liberty to exercise their functions with independence and without fear of consequences, and that this public interest outweighs any damage done an individual by a malicious act of a public official; and that, therefore, public officials acting upon matters germane to their official duties cannot be held liable for damage done by them to individuals.

The difficulty with the appellant company's position is that the Administrative Procedure Act does not provide judicial review for everything done by an administrative agency. The language of the Act is: "Any person suffering legal wrong because of any *agency action* * * * shall be entitled to judicial review thereof." (Italics supplied.) The term "agency action" in that provision is not a general term with the all-embracive meaning usually conveyed by those words, but is a term defined in the statute. The statutory definition is: "'Agency action' includes the whole or part of every agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[6] Among these words, the only one approaching applicability to the publication of the Blue Book is the word "sanction", and that term is also defined in the statute.[7] The statutory definition is:

"'Sanction' includes the whole or part of any agency (1) prohibition, requirement, limitation, or other condition affecting the freedom of any person; (2) withholding of relief; (3) imposition of any form of penalty or fine; (4) destruction, taking, seizure, or withholding of property; (5) assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees; (6) requirement, revocation or suspension of a license; or (7) taking of other compulsory or restrictive action."

Broad as is the judicial review provided by the Administrative Procedure Act, it covers only those activities included within the statutory definition of "agency action". That definition obviously does not cover an act such as the publication of the Blue Book. It follows that the judgment of the District Court must be affirmed.

Affirmed.

EDGERTON, Associate Justice, concurs in the result.

---

[4] Bouvier, Libel (In Torts), and cases there cited.

[5] 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780.

[6] Sec. 2(g).

[7] Sec. 2(f).