# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 10, 2006          Decided July 28, 2006

No. 05-5363

KEVIN TRUDEAU,
APPELLANT

v.

FEDERAL TRADE COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv00400)

———

*David J. Bradford* argued the cause for appellant. With him on the briefs were *Daniel J. Hurtado* and *Daniel Mach*.

*Lewis Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Douglas N. Letter*, Litigation Counsel.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the court filed by Circuit Judge GARLAND.

GARLAND, *Circuit Judge*: Plaintiff Kevin Trudeau challenges a Federal Trade Commission (FTC) press release that reported the settlement of a case the agency brought against him for false and misleading advertising. Trudeau alleges that the press release is itself false and misleading, and that, in issuing it, the FTC exceeded its statutory authority and violated his First Amendment rights. The district court held that it lacked jurisdiction to review Trudeau's claims and, in the alternative, that Trudeau failed to state a claim upon which relief can be granted.

This case raises a host of complicated questions regarding the jurisdiction and authority of federal courts. In the end, however, it comes down to whether Trudeau has the right to take a red pencil to the language of the FTC's press release. He does not. Consequently, although we disagree with the district court's jurisdictional holding, we affirm its dismissal for failure to state a claim.

I

Plaintiff Trudeau is a best-selling author and producer of radio and television information-commercials ("infomercials"). He has used his books and infomercials to promote a wide variety of products as cures for medical conditions ranging from cancer and multiple sclerosis to hair loss and obesity. He has also been an outspoken critic of the FTC.

In 2001 and 2002, Trudeau began marketing two new products in nationally-televised infomercials. He billed the first, a calcium supplement called "Coral Calcium Supreme," as an effective treatment for cancer, multiple sclerosis, lupus, heart disease, and high blood pressure. He marketed the second, a product called "Biotape" that consists of adhesive strips resembling electrical tape, as a "space age mylar" that "connects

the broken circuits" in the body. *Trudeau v. FTC*, 384 F. Supp. 2d 281, 284 (D.D.C. 2005) (internal quotation marks omitted). Trudeau claimed that Biotape could provide permanent relief from debilitating back pain, as well as pain due to arthritis, sciatica, and migraine headaches.

In June 2003, the FTC filed a complaint against Trudeau in the United States District Court for the Northern District of Illinois, alleging that Trudeau's marketing of Coral Calcium Supreme and Biotape was false and misleading, in violation of the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq*. The Commission also filed a motion for an order to show cause why Trudeau should not be held in contempt for violating a 1998 court order that, among other things, prohibited him from making unsubstantiated claims about consumer products. On July 1, 2003, the parties agreed to, and the court entered, a stipulated preliminary injunction barring Trudeau from making the challenged representations about Coral Calcium Supreme and Biotape. Eleven months later, after Trudeau had once again started advertising Coral Calcium Supreme, the FTC asked the court to hold Trudeau in contempt for violating the preliminary injunction. On June 29, 2004, the court granted the Commission's motion, held Trudeau in contempt, and ordered him to halt all advertising of Coral Calcium Supreme. *See Trudeau*, 384 F. Supp. 2d at 284.

On September 2, 2004, the parties agreed to, and the court entered, a Stipulated Final Order for Permanent Injunction and Final Judgment ("2004 Final Order") that resolved all pending FTC complaints against Trudeau. The 2004 Final Order "permanently enjoin[s] and restrain[s]" Trudeau from "producing, disseminating, [or] making . . . any representation in an infomercial aired or played on any television or radio media." 2004 Final Order at 8. The order contains an exception permitting Trudeau to make representations in "the television or

radio media" in connection with "any book, newsletter or other informational publication," provided that the publication does not refer to a product or service that Trudeau is promoting, is not an advertisement for any product or service, and is not sold, promoted, or marketed in conjunction with any product or service that is related to the content of the publication. *Id*. at 9. This exception is limited to infomercials that do not "misrepresent the content of the book, newsletter or informational publication." *Id*. The order further bars Trudeau from marketing "any product containing coral calcium" and from making representations regarding the benefits of any product unless the representations are true and not misleading. *Id*. at 9-11.

The 2004 Final Order also enters "[j]udgment" against Trudeau for "equitable monetary relief in the amount of two million dollars," *id*. at 16, but states that "[n]o portion of any payments under the judgment herein shall be deemed a payment of any fine, penalty or punitive assessment," *id*. at 17-18. In addition, the order states that Trudeau "expressly den[ies] any wrongdoing or liability for any . . . matters," and that "[t]here have been no findings or admissions of wrongdoing or liability . . . other than the finding against Kevin Trudeau for contempt" for violating the July 2003 stipulated preliminary injunction. *Id*. ¶ 8.

On September 7, 2004, five days after entry of the 2004 Final Order, the FTC posted on its website a press release entitled "Kevin Trudeau Banned from Infomercials," and subtitled "Trudeau Settles Claims in Connection with Coral Calcium Supreme and Biotape." App. 51. The press release is the central focus of Trudeau's suit against the Commission.

The first two paragraphs of the release describe the general contours of the settlement incorporated in the 2004 Final Order. The first sentence states:

> A Federal Trade Commission settlement with Kevin Trudeau -- a prolific marketer who has either appeared in or produced hundreds of infomercials -- broadly bans him from appearing in, producing, or disseminating future infomercials that advertise any type of product, service, or program to the public, except for truthful infomercials for informational publications.

*Id*. After further describing the terms of the settlement, the first paragraph ends with this statement: "Trudeau agreed to these prohibitions and to pay the FTC $2 million to settle charges that he falsely claimed that a coral calcium product can cure cancer and other serious diseases and that a purported analgesic called Biotape can permanently cure or relieve severe pain." *Id*.

The second paragraph details the settlement's financial terms. It states that "Trudeau is paying $500,000 in cash and transferring residential property located in Ojai, California, and a luxury vehicle to the Commission to satisfy the $2 million monetary judgment against him." *Id*.

The pertinent remaining portions of the press release are the third and sixth paragraphs, and a disclaimer at the end of the text. The third paragraph contains a quotation from Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection, which states:

> "This ban is meant to shut down an infomercial empire that has misled American consumers for years. . . .

> Other habitual false advertisers should take a lesson; mend your ways or face serious consequences."

*Id*. The sixth paragraph contains additional details about the terms of the 2004 Final Order. It states that the

> settlement announced today permanently bans Trudeau . . . from appearing in, producing, or disseminating infomercials that advertise any product, service, or program and, regardless of the advertising medium used to make the claim, from making representations that any product, program, or service can cure, treat, or prevent any disease or provide health benefits.

*Id*. The paragraph also explains that "[t]he order's ban on future infomercials exempts infomercials for books, newsletters, and other informational publications." *Id*. Finally, the release concludes with the following disclaimer:

> **Note**: This stipulated final order is for settlement purposes only and does not constitute an admission by the defendants of a law violation. A stipulated final order has the force of law when signed by the judge.

*Id*. at 52 (bolded in original).

The press release remains on the FTC's website to this day.[1] At the top-right corner, it prominently features a link to "Related Documents," one of which is a copy of the 2004 Final Order. Five months after the press release was posted, Trudeau asked

---

[1]FTC, Kevin Trudeau Banned from Infomercials: Trudeau Settles Claims in Connection with Coral Calcium Supreme and Biotape (Sept. 7, 2004), *available at* http://www.ftc.gov/opa/2004/09/trudeaucoral.htm.

the FTC to edit and/or remove the webpage. The FTC refused, and this suit followed.

On February 28, 2005, Trudeau filed a complaint against the FTC in the United States District Court for the District of Columbia, seeking only declaratory and injunctive relief. The complaint charged that the FTC had "retaliat[ed] against Trudeau" for his criticism of the agency by "issuing a press release that falsely characterize[d]," Compl. ¶ 48, and "intentionally and deliberately misrepresented," *id.* ¶ 49, the 2004 Final Order. That conduct, Trudeau asserted, "exceeded the FTC's authority under 15 U.S.C. § 46(f) [and] violated the First Amendment." Compl. ¶ 50. The FTC responded with a motion to dismiss the complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim for which relief can be granted under Rule 12(b)(6).

The district court granted the FTC's motion to dismiss. First, the court concluded that it lacked subject-matter jurisdiction because the press release was not "a 'final agency action'" under "section 704 of the [Administrative Procedure Act]," 5 U.S.C. § 704. *Trudeau*, 384 F. Supp. 2d at 289. Second, the court held, "in the alternative, that [Trudeau's] claims failed to state a viable cause of action as a matter of law." *Id.* at 288.[2]

---

[2]Trudeau also filed a motion for a preliminary injunction, which the district court denied. In light of its decision to grant the FTC's motion to dismiss, the court concluded, inter alia, that Trudeau had no likelihood of success on the merits. Because we affirm the district court's grant of the FTC's Rule 12(b)(6) motion, we affirm the denial of the preliminary injunction as well. *See Michigan State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) (holding that a court may not issue a preliminary injunction where the plaintiff has no likelihood of

Trudeau now appeals. We review the district court's dismissal for lack of subject-matter jurisdiction de novo. *See Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). We apply the same de novo standard to the dismissal for failure to state a claim. *See Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). "In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). In this case, both the FTC's press release and the 2004 Final Order were attached as exhibits to Trudeau's complaint. *See* Compl. ¶¶ 18, 19.

## II

We begin with the district court's dismissal of the complaint on the ground that the court lacked jurisdiction to hear the matter. The dismissal implicates two different jurisdictional questions, which we address below.

## A

The district court concluded that it lacked subject-matter jurisdiction over Trudeau's claims because the FTC's press release was not final agency action under § 704 of the APA, 5

---

success on the merits); *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 614 (D.C. Cir. 1992) (affirming denial of preliminary injunction where the district court properly concluded that the plaintiff had "no likelihood of success on the merits").

U.S.C. § 704.[3] *Trudeau*, 384 F. Supp. 2d at 288-89, 294 & n.13. Although the FTC pressed this jurisdictional position below, it did not brief it on appeal and declined to make it at oral argument. *See* Oral Arg. Tape 23:03-28:15. Nonetheless, because the district court determined that § 704's final agency action requirement was jurisdictional and granted the FTC's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), we must address the question. *See LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996) ("We must, of course, examine not only our own jurisdiction but also that of the court below, regardless of whether the parties have neglected the issue, addressed it only obliquely, or even tried to waive it.").

Section 704 of the APA states, inter alia, that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The district court interpreted this provision to mean that "the presence of final agency action is a jurisdictional issue." *Trudeau*, 384 F. Supp. 2d at 294 n.13. The APA, however, is not a jurisdiction-conferring statute. As the Supreme Court held in *Califano v. Sanders*, "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." 430 U.S. 99, 107 (1977).[4] Because § 704's declaration that final agency action is "subject to judicial review" is not a grant of jurisdiction, even if we were to infer by negative

---

[3]The district court and the parties refer to § 10(c) of the APA, codified at 5 U.S.C. § 704, as "§ 704 of the APA." We adopt that convention as well.

[4]*See Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) ("The judicial review provisions of the APA are not jurisdictional.").

implication that agency conduct not amounting to final agency action is not "reviewable,"[5] that inference would not deprive a federal court of any jurisdiction it otherwise has.

It is true that some of our opinions have loosely referred to the final agency action requirement as "jurisdictional."[6] That is hardly surprising, as "'[j]urisdiction . . . is a word of many, too many, meanings.'" *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235, 1242 (2006) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998)).[7] Or, as Judge Friendly

---

[5]*But see infra* Part III (noting that the negative implication is limited to precluding a cause of action under the APA).

[6]*See, e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005); *Indep. Petroleum Ass'n of Am. v. Babbitt,* 235 F.3d 588, 594 (D.C. Cir. 2001); *DRG Funding Corp. v. Sec'y of HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996); *Public Citizen v. Office of the U.S. Trade Rep.*, 970 F.2d 916, 918 (D.C. Cir. 1992). None of these opinions considered or applied *Sanders*, 430 U.S. at 107, or *Air Courier Conference*, 498 U.S. at 523 n.3. *See supra* note 4 and accompanying text. Nor did any have the benefit of the "bright line" that the Court recently drew between jurisdictional and nonjurisdictional requirements in *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (2006). *See infra* note 7.

[7]In *Arbaugh*, the Court unanimously held that the number-of-employees requirement for application of Title VII, 42 U.S.C. § 2000e(b), is not jurisdictional, but rather "relates to the substantive adequacy of [a plaintiff's] Title VII claim." 126 S. Ct. at 1238-39. Noting that the distinction between "'subject-matter' jurisdiction over a controversy[] and the essential ingredients of a federal claim for relief" are "sometimes confused or conflated," *id*. at 1238, the Court established a "readily administrable bright line" to separate the two:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts

and Justice Frankfurter put it more poetically, the word is "'a verbal coat of too many colors.'" *In re Beck Industries, Inc.*, 725 F.2d 880, 881 (2d Cir. 1984) (Friendly, J.) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 39 (1952) (Frankfurter, J., dissenting)). In *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, however, we made clear that, where "judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is *not* jurisdictional." 324 F.3d 726, 731 (D.C. Cir. 2003) (emphasis added). And in a case decided just last month, we followed *Reliable*, reaffirming that the APA's final agency action requirement is not jurisdictional. *See Center for Auto Safety v. NHTSA*, No. 04-5402, 2006 WL 1715358, at *7 (D.C. Cir. June 23, 2006) (citing *Reliable*, 324 F.3d. at 731).[8]

---

> and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id*. at 1245 (internal citations omitted). Because Congress did not clearly state that the final agency action requirement of APA § 704 is jurisdictional, it falls on the nonjurisdictional side of the line the Court has drawn.

[8]Final agency action requirements can be jurisdictional in other statutes that, unlike the APA, confer jurisdiction on federal courts. *See, e.g.*, *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (holding that the "final decision" requirement of a section of the Social Security Act that confers subject-matter jurisdiction on district courts is a "statutorily specified jurisdictional prerequisite"); *North Am. Catholic Educ. Programming Found. v. FCC*, 437 F.3d 1206, 1209 (D.C. Cir. 2006) (stating that the "absence of finality is sufficient to preclude our jurisdiction" under the Communications Act of 1934); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 426 (D.C. Cir. 2004) (dismissing a case for lack of jurisdiction because an EPA letter was not "'final action' within the meaning of the judicial review provision" of the

Although the APA does not confer jurisdiction, what its judicial review provisions, 5 U.S.C. §§ 701-06, do provide is a limited cause of action for parties adversely affected by agency action. *See Center for Auto Safety*, 2006 WL 1715358, at *7.[9] Accordingly, we will need to address the "final agency action" limitation of § 704 in Part III, where we consider whether Trudeau has a valid cause of action for his claims against the FTC. *See Reliable*, 324 F.3d at 731 ("If there was no final agency action . . . , there is no doubt that appellant would lack a cause of action under the APA.").

Finally, because the APA neither confers nor restricts jurisdiction, we must still determine whether some other statute provides it. For that, we are assisted by Trudeau's complaint, *see* Compl. ¶ 7, which draws our attention to the general federal-question statute, 28 U.S.C. § 1331. Section 1331 gives the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As we discuss in Part III, Trudeau asserts that three different causes of action are applicable to his claims: (1)

---

Clean Air Act); *Molycorp, Inc. v. EPA*, 197 F.3d 543, 545 (D.C. Cir. 1999) (same under the Resource Conservation and Recovery Act).

[9]*See Bennett v. Spear*, 520 U.S. 154, 175 (1997) (stating that § 704 provides a cause of action for all "final agency action for which there is no other adequate remedy in a court"); *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n.4 (1986) (holding that a "right of action" is "expressly created" by § 704 of the APA "absent some clear and convincing evidence of legislative intention to preclude review"); *Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985) ("The Supreme Court has clearly indicated that the Administrative Procedure Act itself, although it does not create subject-matter jurisdiction, does supply a generic cause of action in favor of persons aggrieved by agency action.").

the APA; (2) a "nonstatutory action, independent of the APA," Appellant's Br. 29; and (3) the First Amendment directly. Section 1331 is an appropriate source of jurisdiction for all three.[10]

B

A second jurisdictional question at issue in this case is whether the United States has waived its sovereign immunity, so that Trudeau may bring his claims against the FTC. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."). The FTC raised sovereign immunity as a bar before the district court but, once again, did not mention immunity in its appellate briefs and declined to discuss it at oral argument. *See* Oral Arg. Tape 23:03-28:15.

The district court suggested, *see Trudeau*, 384 F. Supp. 2d at 288-89, 294, and Trudeau maintains, that Congress provided the necessary waiver of immunity in the second sentence of APA § 702, which reads:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

---

[10]*See Hill v. Norton*, 275 F.3d 98, 103 (D.C. Cir. 2001) (APA); *Road Sprinkler Fitters Local Union 669 v. Herman*, 234 F.3d 1316, 1319 (D.C. Cir. 2000) (APA); *Five Flags Pipe Line Co. v. DOT*, 854 F.2d 1438, 1439 (D.C. Cir. 1988) (nonstatutory actions); *R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002) (nonstatutory actions); *Hubbard v. EPA*, 949 F.2d 453, 461-62 (D.C. Cir. 1991) (First Amendment).

5 U.S.C. § 702. Trudeau has limited the relief he seeks to a declaratory judgment and an injunction, and there is no doubt that § 702 "waives the Government's immunity from actions seeking relief 'other than money damages.'" *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999); *see Hubbard v. EPA*, 809 F.2d 1, 11 (D.C. Cir. 1987); *Dronenburg v. Zech*, 741 F.2d 1388, 1390-91 (D.C. Cir. 1984). Nonetheless, the FTC argued in the district court that § 702's waiver was limited in two additional respects. According to the FTC: (1) the waiver applies only to actions arising under the APA; and (2) since review under APA § 704 is limited to "final agency action," the waiver of sovereign immunity is similarly restricted to conduct that falls within that compass.

We have previously, and repeatedly, rejected the FTC's first argument, expressly holding that the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).[11] There is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA. The sentence waives sovereign immunity for

---

[11]*See, e.g.*, *Hubbard*, 949 F.2d at 466 (holding, in a non-APA case brought directly under the First Amendment, that "[s]ection 702 of the APA waives [sovereign] immunity for *all* suits seeking [equitable] relief" (emphasis added)); *Hubbard*, 809 F.2d at 11 (same); *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) ("[T]he 1976 amendments to § 702 of the Administrative Procedure Act, 5 U.S.C. § 702, eliminated the sovereign immunity defense in *virtually all* actions for non-monetary relief against a U.S. agency or officer acting in an official capacity." (emphasis added)); *Sea-Land Serv., Inc. v. Alaska Railroad*, 659 F.2d 243, 244 (D.C. Cir. 1981) (holding that § 702 "eliminat[es] [the] sovereign immunity defense in *all* actions for specific, nonmonetary relief against a United States agency," including a suit under the Sherman Act (emphasis in original)).

"[a]n action in a court of the United States seeking relief other than money damages," not for an action brought under the APA.

Our previous examination of the legislative history of this sentence confirms that conclusion. Congress added the sentence to § 702 when it amended the section in 1976. *See* Pub. L. 94-574, 90 Stat. 2721, 94th Cong., 2d Sess. (1976). As we have explained, "[t]he Judiciary Committees of both Houses, in their reports on the 1976 amendment, identified as the measure's clear purpose 'elimina(tion of) the sovereign immunity defense in *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity.'" *Sea-Land Serv., Inc. v. Alaska Railroad*, 659 F.2d 243, 244 (D.C. Cir. 1981) (emphasis in original) (quoting S. REP. NO. 94-996, at 8 (1976) and H.R. REP. NO. 94-1656, at 9 (1976)).[12] Moreover, the Senate Report plainly indicated that Congress expected the waiver to apply to nonstatutory actions, and thus not only to actions under the APA. "The committee does not believe," the Report stated, that the amendment's "partial elimination of sovereign immunity, as a barrier to *nonstatutory review* of Federal administrative action, will create undue interference with administrative action." S. REP. NO. 94-996, at 8 (emphasis added).

---

[12]*See Dronenburg*, 741 F.2d at 1390 (noting that the Senate Report "expressly stated that 'the time [has] now come to eliminate the sovereign immunity defense in *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity'" (quoting *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (quoting S. REP. NO. 94-996, at 7-8 (1976)))). In *Schnapper*, we added that "[w]e may also doubt whether, even in the absence of section 702," courts would be unable to "award[] equitable relief on the basis of . . . constitutional claims." 667 F.2d at 108 n.2.

Although we have never directly considered the contention that the "final agency action" requirement of § 704 restricts § 702's waiver of sovereign immunity, our holding that the waiver is not limited to APA cases -- and hence that it applies regardless of whether the elements of an APA cause of action are satisfied -- removes the linchpin of the FTC's argument. Moreover, the language of the waiver sentence again provides no support for the FTC's contention. While the sentence does refer to a claim against an "agency" and hence waives immunity only when the defendant falls within that category,[13] it does not use either the term "final agency action" or the term "agency action."[14] Nor does the legislative history refer to either limitation. To the contrary, the House and Senate Reports' repeated declarations that Congress intended to waive immunity for "any," H.R. REP. NO. 94-1656, at 3, and "all," *id.* at 9; S. REP. NO. 94-996, at 8, actions for equitable relief against an agency make clear that no such limitations were intended.

---

[13]*See* S. REP. NO. 94-996, at 10 (stating that the amendment "will be applicable only to functions falling within the definition of 'agency' in 5 U.S.C. section 701"); *Clark*, 750 F.2d at 102 (holding that plaintiff "may not take advantage of [§ 702's] waiver of sovereign immunity since [defendant] Library of Congress is not 'an agency' as defined under" the APA, but further holding that plaintiff's "claims for non-monetary, specific relief are not barred by sovereign immunity [because it] is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions . . . are alleged to be unconstitutional or beyond statutory authority").

[14]The APA defines both "agency," 5 U.S.C. § 551(1), and "agency action," *id*. § 551(13).

In sum, we hold that APA § 702's waiver of sovereign immunity permits not only Trudeau's APA cause of action, but his nonstatutory and First Amendment actions as well. We also hold that the waiver applies regardless of whether the FTC's press release constitutes "final agency action." *Accord Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (holding that the government's "attempt to restrict the waiver of sovereign immunity to actions challenging 'agency action' as technically defined in § 551(13) offends the plain meaning of the amendment"); *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988) (rejecting the contention that the waiver in § 702 "exists only to allow review of a final agency decision," and holding that "[t]he waiver of sovereign immunity contained in section 702 is not dependent on application of the . . . review standards of the APA"). The district court therefore had subject-matter jurisdiction to hear Trudeau's suit under 28 U.S.C. § 1331, and its dismissal of the complaint for lack of jurisdiction pursuant to Rule 12(b)(1) was erroneous.

III

Having concluded that there is jurisdiction, we now turn to whether Trudeau has stated a claim upon which relief can be granted. "Although the district court erroneously dismissed the action pursuant to Rule 12(b)(1), we could nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *see Reliable*, 324 F.3d at 731.

Trudeau's complaint asserts two claims against the FTC. First, he contends that the FTC exceeded its statutory authority under 15 U.S.C. § 46(f) when it issued the press release. Section 46(f) provides that the FTC "shall . . . have power" to "make

public from time to time such portions of the information obtained by it . . . as are in the public interest." 15 U.S.C. § 46(f). Trudeau argues that, by "intentionally and deliberately misrepresent[ing] the nature of the Stipulated Order in its press release," Compl. ¶ 49, the agency acted contrary to the "public interest" and therefore in excess of its authority under § 46(f). Second, Trudeau claims that issuance of the press release violated his First Amendment rights. He contends that the Commission intended to retaliate against him "for expressing his negative opinions about the FTC" by "issuing a press release that falsely characterize[d] the Stipulated Order as containing a finding of wrongdoing or liability on [his] part." Compl. ¶ 48.

Whether these are claims "upon which relief can be granted" depends in part on whether there is a cause of action that permits Trudeau to invoke the power of the court to redress the violations of law that he claims the FTC has committed. *See generally Davis v. Passman*, 442 U.S. 228, 239-40 & n.18 (1979). It also depends on whether the allegations of Trudeau's complaint are legally sufficient to state the violations he claims. We consider the cause of action question in this Part, and the sufficiency of Trudeau's claims in Part IV.[15]

---

[15]As Justice Cardozo observed, a "'cause of action' may mean one thing for one purpose and something different for another." *United States v. Memphis Cotton Oil Co*., 288 U.S. 62-67-68 (1933). Courts often use the terms "cause of action" and "claim" interchangeably; sometimes it is said that a "cause of action is a necessary element of [a litigant's] 'claim.'" *Davis v. Passman*, 441 U.S. at 239. Here, we refer to a "cause of action" as the legal authority (e.g., the APA) that permits the court to provide redress for a particular kind of "claim" (e.g., that issuance of the press release violated § 46(f)).

As we have noted, Trudeau identifies three causes of action that he asserts authorize his suit: (1) the APA; (2) a nonstatutory action; and (3) the First Amendment directly.[16] Each involves certain complexities of analysis.

First, it is clear that the APA "suppl[ies] a generic cause of action in favor of persons aggrieved by agency action." *Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985); *see supra* note 9. Moreover, the APA's "scope of review" provision permits us to grant Trudeau's request to hold the press release unlawful if we find it "contrary to constitutional right" because of the asserted First Amendment violation, or "in excess of statutory . . . authority" because it exceeded the FTC's powers under § 46(f). 5 U.S.C. § 706(2)(B), (C).[17] The problem with relying on the APA, however, is that "§ 704 limits causes of action under the APA" to "final agency action." *Center for Auto Safety,* 2006 WL 1715358, at *7. Thus, although the absence of final agency action would not cost federal courts their jurisdiction, *see supra* Part II, it would cost Trudeau his APA cause of action.

---

[16]Trudeau does not suggest that the Federal Trade Commission Act itself provides a cause of action permitting a private party to challenge a press release as in excess of the authority granted by § 46(f) of the Act.

[17]APA § 706, entitled "Scope of Review," states in pertinent part:

> The reviewing court shall . . . (2) hold unlawful and set aside agency action . . . found to be . . . (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations . . . .

5 U.S.C. § 706.

As the district court noted, we have never found a press release of the kind at issue here to constitute "final agency action" under the APA. *See Trudeau*, 384 F. Supp. 2d at 289. We first considered this question nearly sixty years ago in *Hearst Radio v. FCC*, 167 F.2d 225 (D.C. Cir. 1948), in which a plaintiff alleged that the FCC had issued a defamatory publication that it knew to be false. The difficulty with the plaintiff's challenge, we said, was that suits under the APA are limited to "agency action," and that the FCC publication did not come within the definition of that term. *Id*. at 227. The APA defines "agency action" as "includ[ing] the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In *Hearst Radio*, we concluded that, "[a]mong these words, the only one approaching applicability to the publication . . . is the word 'sanction,'" and that the definition of that word "does not cover an act such as" the FCC publication. 167 F.2d at 227; *see Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (following *Hearst Radio*).[18]

---

[18]The APA defines "sanction" as including:

> the whole or a part of an agency -- (A) prohibition, requirement, limitation, or other condition affecting the freedom of a person; (B) withholding of relief; (C) imposition of penalty or fine; (D) destruction, taking, seizure, or withholding of property; (E) assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees; (F) requirement, revocation, or suspension of a license; or (G) taking other compulsory or restrictive action.

5 U.S.C. § 551(10).

We have twice questioned "the continued validity of the *Hearst Radio* decision." *Impro Products, Inc. v. Block*, 722 F.2d 845, 849 (D.C. Cir. 1983); *see Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1118 (D.C. Cir. 1988). In *Industrial Safety Equipment Ass'n, Inc. v. EPA*, for example, we said that "an agency intent on penalizing a party through adverse publicity, especially false or unauthorized publicity, might well merit a review of its action" as a sanction. 837 F.2d. at 1119.[19] But we have never had the need either to reconsider *Hearst Radio*, or to consider whether it is distinguishable. *See Indus. Safety Equip. Ass'n*, 837 F.2d at 1119 (resolving case on the ground that, because plaintiffs offered no evidence that the publication was false or intended to penalize plaintiffs, it could not qualify as a sanction); *Impro Products*, 722 F.2d at 849 (resolving case on statute of limitations grounds). And the FTC insists that we are bound by *Hearst Radio* to conclude that its press release is not subject to APA review because it does not constitute agency action.[20]

Second, Trudeau argues that he may maintain his case as a nonstatutory action. As we held in *Chamber of Commerce v. Reich*, "[i]f a plaintiff is unable to bring his case predicated on either a specific or general statutory review provision, he may still be able to institute a non-statutory review action." 74 F.3d at 1327. Because "[j]udicial review is favored when an agency is charged with acting beyond its authority," *Dart v. United*

---

[19]*See Impro Products*, 722 F.2d at 849 ("[W]e find it troubling that literal adherence to the *Hearst Radio* rule in a case like this one would preclude judicial review under the APA of an agency's dissemination of information that is concededly false and, therefore, completely inconsistent with [its] statutory purpose.").

[20]The FTC further argues that, even if the press release is "agency action," it is not "final" agency action. Appellee's Br. 20-21.

*States*, 848 F.2d 217, 221 (D.C. Cir. 1988), "[e]ven where Congress is understood generally to have precluded review, the Supreme Court has found an implicit but narrow exception, closely paralleling the historic origins of judicial review for agency actions in excess of jurisdiction." *Griffith v. FLRA*, 842 F.2d 487, 492 (D.C. Cir. 1988). Pursuant to this case law, "judicial review is available when an agency acts *ultra vires*," even if a statutory cause of action is lacking. *Aid Ass'n for Lutherans v. United States Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003).[21]

Trudeau contends that his § 46(f) claim falls within the core of the doctrine of nonstatutory review because the issuance of a false and misleading press release exceeds the FTC's authority to disseminate information "in the public interest." 15 U.S.C. § 46(f). The FTC counters that nonstatutory review is available only when an agency "violate[s] a 'clear and mandatory' statutory prohibition [or] a 'specific and unambiguous statutory command,'" and that § 46(f) does not fit that bill. Appellee's Br. 27 (quoting *Griffith*, 842 F.2d at 493). There certainly is no question that nonstatutory review "is intended to be of extremely limited scope," *Griffith*, 842 F.2d at 493, and hence represents a more difficult course for Trudeau than would review under the APA (assuming final agency action) for acts "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(C).

---

[21]Ironically, in light of the allegations in this case, the font of the nonstatutory review doctrine is *American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902). That case held that a court had power to grant relief to a plaintiff who challenged the Postmaster General's statutory authority to prevent him "from advertising, fraudulently in the Postmaster General's view, that he could cure disease by the 'proper exercise of the faculty of the brain and mind.'" *Reich*, 74 F.3d at 1327 (quoting *McAnnulty*, 187 U.S. at 96).

Third, Trudeau asserts that he has a direct cause of action under the First Amendment. We have inferred such a cause before,[22] and the FTC concedes that it is available to Trudeau, *see* Oral Arg. Tape at 29:54-30:04. Such a cause would, however, be limited to Trudeau's claim of unconstitutional retaliation, and would not also cover -- as would the APA -- his claim that the press release exceeds the FTC's statutory authority.

In sum, but for APA § 704's requirement of "final agency action," the cause of action provided by the APA offers Trudeau the more inclusive (covering both his § 46(f) and constitutional claims) and more expansive (as compared to the narrow scope of nonstatutory review) vehicle for asserting his claims. By the same token, if Trudeau's claims would fail review under the APA even assuming the press release satisfied the requirement of § 704, they could not succeed under any other vehicle. As we explain in the next Part, we have concluded that Trudeau's claims would indeed fail, even with the benefit of that assumption. We are permitted to proceed in this manner because "[w]hether a cause of action exists is not a question of

---

[22]*See Hubbard v. EPA*, 809 F.2d at 11 n.15 (holding that the plaintiff could sue the EPA for violating the First Amendment because "the court's power to enjoin unconstitutional acts by the government . . . is inherent in the Constitution itself"); *see also Hartman v. Moore*, 126 S. Ct. 1695, 1701 (2006) (holding that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right'" (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998))); *Beedle v. Wilson*, 422 F.3d 1059, 1066 (10th Cir. 2005) ("[A] governmental lawsuit brought with the intent to retaliate against a citizen for the exercise of his First Amendment rights is itself a violation of the First Amendment."); *cf. Passman*, 442 U.S. at 242 (confirming that "a cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment").

jurisdiction, and may be assumed without being decided." *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) (citing *Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979)); *see Impro Products*, 722 F.2d at 846 (assuming that an allegedly false and misleading press release constituted "final agency action," but holding that relief was nonetheless barred by the statute of limitations).

## IV

Having found that there is jurisdiction to consider Trudeau's claims, and having assumed that there is a cause of action available to assert them, we now discuss why the allegations of Trudeau's complaint are nonetheless legally insufficient to state claims upon which relief can be granted. In subpart A, we identify an essential element of both of Trudeau's claims; in subpart B, we explain why the existence of that element may be resolved on a motion to dismiss; and in subpart C, we conclude that Trudeau has failed to establish that element as a matter of law.

## A

An essential element common to both of Trudeau's claims is the contention that the FTC's press release is false or misleading.[23]  Trudeau's complaint charges that the FTC

---

[23]Because we conclude that Trudeau cannot establish this element as a matter of law, *see infra* Part IV.C, we do not address the other elements of his claims. *See, e.g.*, *Hartman*, 126 S. Ct. at 1704 (stating that the elements of a First Amendment retaliation claim include "retaliatory animus," "cause," and "injury"); *Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir. 2002) (holding that a retaliatory adverse action "must constitute an injury that would likely chill a person of ordinary firmness from engaging in the protected [First Amendment]

retaliated against him by issuing a press release that "falsely characterize[d]," Compl. ¶ 48, and intentionally "misrepresented," *id*. ¶ 49, the 2004 Final Order. That conduct, the complaint asserts, both "exceeded the FTC's authority under 15 U.S.C. § 46(f) [and] violated the First Amendment." Compl. ¶ 50. Similarly, Trudeau's appellate briefs charge that "the FTC exceeded the authority granted by [15 U.S.C. § 46(f)] by releasing a materially false and misleading news release," Appellant's Br. 39 (citing Compl. ¶¶ 19-25),[24] and violated the First Amendment "by disseminating false information about the Stipulated Order" in retaliation for Trudeau's protected activity, *id*. at 37 (citing Compl. ¶ 49).[25]

The district court suggested that, to succeed on his claims, Trudeau would have to establish that the press release was "obviously false." *Trudeau v. FTC*, 384 F. Supp. 2d at 296. As that stricter standard is unnecessary to resolve the case, we do not address it. That said, we do believe that Trudeau must show that his allegations are sufficient to establish that the press release was *at least* false or misleading. Our insistence on that standard is justified because those are the claims that Trudeau

activity," and that it must be "motivated at least in part as a response to the exercise of the plaintiff's constitutional rights").

[24]*See also* Appellant's Br. 39 ("Trudeau's allegations that the news release was misleading . . . suffice to state a claim that the agency has exceeded its authority under §46(f).").

[25]*See also* Appellant's Br. 37 ("Trudeau alleges that he publicly criticized the FTC -- clearly a protected exercise of First Amendment rights -- and that the FTC, in retaliation, attempted to injure him by releasing false information. Nothing more is necessary.").

made in the district court and in his appellate briefs,[26] and because he cites no case that would support a lesser standard.[27]

That standard is also justified by the interests that are at stake here. As we said in *FTC v. Cinderella Career & Finishing Schools, Inc.*, in the course of holding that § 46(f) authorizes the FTC to issue factual press releases concerning pending adjudicatory proceedings:

> If the unsophisticated consumer is to be protected in any measure from deceptive or unfair practices, it is essential that he be informed in some manner as to the identity of those most likely to prey upon him utilizing such prohibited conduct. Certainly advice through news media as to actions being taken by a government agency in his behalf constitutes a prophylactic step

---

[26]At oral argument, Trudeau suggested a standard at once more lenient and more vague, contending that even a true statement would be sufficient if it caused the plaintiff to suffer a "palpable injury." Oral Arg. Tape at 6:29. For the reasons stated in the following paragraph, we are doubtful that such a standard has any application to the circumstances of this case. In any event, oral argument is too late to raise a matter for appellate consideration. *See Robertson v. Am. Airlines, Inc.*, 401 F.3d 499, 504 n.2 (D.C. Cir. 2005); *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003); *C.J. Krehbiel Co. v. NLRB*, 844 F.2d 880, 883 n.1 (D.C. Cir. 1988).

[27]Trudeau concedes that no court has ever decided in a plaintiff's favor the kind of claims he advances here. *See* Oral Arg. Tape at 17:42-18:33, 19:11-19:15. The closest case appears to be *B.C. Morton International Corp. v. FDIC*, in which the court recognized a non-monetary cause of action in tort for "the issuance by [an] agency of a press release *deliberately misrepresenting* the application of federal law for the specific purpose of destroying plaintiff's business." 305 F.2d 692, 693 (1st Cir. 1962) (emphasis added).

> addressed ultimately to the elimination of the conduct prohibited by the statute. The Commission, in attempting to bring its action relative to what it has reason to believe is unlawful conduct to the attention of the widely spread public by the issuance of factual press releases, is, we conclude, acting within its authority as defined by the statute.

404 F.2d 1308, 1314 (D.C. Cir. 1968).[28] Although there are important interests on the other side of the balance as well, they do not arise in a case involving the dissemination of information that concerns a public-record document regarding a commercial matter (e.g., the 2004 Final Order),[29] and that is neither false nor misleading.[30]

---

[28]*See Indus. Safety Equip.*, 837 F.2d at 1118 (declaring that agency publications serve an essential role in "promoting Congress' clear mandate that government information, particularly from consumer-oriented agencies, reach the public," and that an agency's ability to warn the public "would be crippled were [it] not permitted to use the quick and cheap instrument of publicity").

[29]*Compare Bloch v. Ribar*, 156 F.3d 673, 676 (6th Cir. 1998) (holding that the plaintiff's allegation that the defendant sheriff released "confidential and highly personal details" about the plaintiff in retaliation for her criticism of him was sufficient to state a cause of action under the First Amendment).

[30]*See Indus. Safety Equip.*, 837 F.2d at 1118 (noting "two separate goals of fair administrative process: protecting parties from false or unauthorized agency news releases and promoting Congress' clear mandate that government information, particularly from consumer-oriented agencies, reach the public"); *Cinderella*, 404 F.2d at 1313-14 (holding that, although a press release may result "in a substantial tarnishing of the name, reputation, and status of the named respondent . . . , [i]f the unsophisticated consumer is to be protected in any measure from deceptive or unfair practices, it is essential that he be

B

Trudeau insists that whether the FTC's press release is false or misleading is a question of fact that cannot be determined on a motion to dismiss under Rule 12(b)(6).

It is true that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim," and that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). It is thus possible that, had Trudeau's complaint simply alleged that the FTC issued a false press release about him that was retaliatory and beyond the FTC's authority, his complaint might have survived a motion to dismiss. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000). (Of course, the text at issue would eventually have been flushed out by a motion for summary judgment under Federal Rule of Civil Procedure 56.) But it also "is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Id*.[31] Here, Trudeau's complaint makes quite clear which text he regards as false (specified sentences in the press release), and why he regards it as false (because of specified inconsistencies with the 2004 Final Order). And because he has attached all of the relevant

---

informed in some manner as to the identity of those most likely to prey upon him utilizing such prohibited conduct").

[31]*See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (stating that "Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claim asserted"); *see also Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998).

text to the complaint, *see* Compl. Ex. A (2004 Final Order); *id.* Ex. B (press release), it is appropriate for a court to examine that material in ruling under Rule 12(b)(6). *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624-25; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Moreover, although "[i]n considering the claims dismissed pursuant to Rule 12(b)(6), we must treat the complaint's factual allegations as true [and] must grant plaintiff the benefit of all reasonable inferences from the facts alleged," *Sparrow*, 216 F.3d at 1114, "we are not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see Papasan*, 478 U.S. at 286. Trudeau contends that whether a statement is false is always a factual matter and never a legal conclusion. We do not agree that the truth or falsity of a statement can never be decided as a matter of law.

*Moldea v. New York Times Co.*, for example, involved an analogous situation: a district court's grant of summary judgment to a defamation defendant on the pleadings and without discovery. 15 F.3d 1137 (D.C. Cir.), *modified on reh'g*, 22 F.3d 310 (D.C. Cir. 1994). Based solely on a comparison of the plaintiff's book and the book review that allegedly mischaracterized it, the district court concluded that defamatory statements in the review were not actionable as a matter of law because "no reasonable juror could find them to be false." 15 F.3d at 1139. On appeal, we agreed with the district court as to

two of the statements in the review. *Id*. at 1148-49; *see Moldea,* 22 F.3d at 312-13.[32]

We have also applied this "no reasonable juror" (or "no reasonable person") test to a motion to dismiss. *See Browning v. Clinton*, 292 F.3d 235, 247-48 (D.C. Cir. 2002) (affirming the dismissal of a defamation claim under Rule 12(b)(6) because "no reasonable person would be able to infer that [the defendant] was accusing [the plaintiff] of deceitfulness").[33] So have other

---

[32]Our initial opinion in *Moldea* reversed the district court's grant of summary judgment on the ground that two other statements could not be deemed true "as a matter of law" because "a reasonable juror could conclude that [they were] false." 15 F.3d at 1146-47. On reconsideration, we held that while "[s]uch a standard might be appropriate in the case of an ordinary libel," it was "an inappropriate measure of an interpretation of a book." 22 F.3d at 317. For book reviews, we concluded that a "supportable interpretation" standard was appropriate, held that a "reasonable person could find that the review's characterizations were supportable interpretations of the book," and therefore affirmed the grant of summary judgment in favor of the defendant. *Id.* (emphasis omitted). The "supportable interpretation" standard is, of course, substantially more favorable to the FTC than the "no reasonable juror" standard we apply in this case.

[33]In Trudeau's case, the district court could also have converted the plaintiff's motion to dismiss into a motion for summary judgment pursuant to Rule 12(b). *FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1144 (D.C. Cir. 2004). Similarly, this court could characterize "the district court's dismissal as a grant of summary judgment under Rule 56(c)." *Id*.

circuits.[34]  We will do so here as well.[35]

C

Trudeau alleges that the FTC's press release falsely and misleadingly characterizes the 2004 Final Order in four respects: it "[1] falsely stat[es] that Trudeau had been banned entirely from infomercials, [2] erroneously impl[ies] that the settlement was a judicial finding that Trudeau was a habitual false advertiser, [3] falsely impl[ies] that the $2 million was a fine, and [4] conspicuously omit[s] the fact that there has been no finding of false advertising." Appellant's Br. 1-2. We consider each of these allegedly "false and misleading assertions and implications," *id*. at 6, below.

---

[34]*See Hoffman-Pugh*, 312 F.3d at 1227 (affirming the dismissal of a defamation complaint under Rule 12(b)(6) because, "construing the [allegedly defamatory] book as a whole," the book could not reasonably be read as accusing the plaintiff of murder); *cf. Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 118 (2d Cir. 2005) (reversing a district court's dismissal of a defamation claim because, "on this record," a "reasonable jury could conclude that the [news article] was false"); *Durning*, 815 F.2d at 1269 (reversing the Rule 12(b)(6) dismissal of a claim that a securities offering was misleading because, upon examining the offering, the court could not conclude that "no reasonable investor" could read the offering as the defendant suggested).

[35]In his reply brief, Trudeau contends that he is entitled to introduce empirical evidence of how an average consumer would likely perceive the release. *See* Reply Br. 24. The cases he cites for this proposition, however, rely on the elements of statutory causes of action that Trudeau does not (and cannot) assert here. *See Clorox Co. v. Proctor & Gamble Commer. Co*., 228 F.3d 24, 36-37 (1st Cir. 2000) (Lanham Act); *Johnson v. Revenue Mgmt. Corp*., 169 F.3d 1057, 1060-61 (7th Cir. 1999) (Fair Debt Collection Practices Act).

1. "First and foremost," Trudeau objects to the press release's repeated use of the word "ban" to describe the 2004 Final Order. Appellant's Br. 6. For example, the headline of the release states: "Kevin Trudeau Banned from Infomercials." App. 51. Similarly, Acting Director Parnes is quoted as stating: "This ban is meant to shut down the infomercial empire that has misled American consumers for years." *Id*. at ¶ 3. Trudeau contends that the use of the term "ban" or "banned" is "inaccurate and misleading" in two respects. Appellant's Br. 7.

Trudeau argues that the word "ban" is misleading because the order did not "completely bar Trudeau from infomercials; . . . the agreement expressly permits Trudeau to produce and appear in infomercials for books and other publications." *Id*. But the release does not say that Trudeau is completely barred from infomercials. To the contrary, the very first sentence of the release notes the precise caveat to which Trudeau avers: "A Federal Trade Commission settlement with Kevin Trudeau . . . broadly bans him from . . . disseminating future infomercials that advertise any type of product . . . , *except for truthful infomericals for informational publications*." App. 51 at ¶ 1 (emphasis added). And the sixth paragraph states that "[t]he order's ban on future infomercials exempts infomercials for books, newsletters, and other informational publications." *Id*. at ¶ 6.

Trudeau also insists that "the term 'banned' is inapposite" because he "*agreed*, as part of the Stipulated Order, not to produce certain types of infomercials; the sort of coercion implied by the term 'banned' never figured into the settlement." Appellant's Br. 7 (emphasis in original). Trudeau did agree, and the first paragraph of the release makes that quite clear to the reader, stating that "Trudeau agreed to these prohibitions . . . to settle" the FTC's charges. App. 51 at ¶ 1. But Trudeau's agreement to the order's terms does not render the word "ban"

inapposite. The dictionary defines "ban" as "to *prohibit* esp[ecially] by legal means the . . . dissemination . . . of," WEBSTER'S NEW INTERNATIONAL DICTIONARY 169 (Philip Babcock Gove ed., 1993) (emphasis added), and that is exactly what the 2004 Final Order did, *see* 2004 Final Order at 7 (listing "*prohibited* business activities" (emphasis added)); *id*. at 30 (declaring that "[t]his Part II *prohibits* the making of any representations for" specified products (emphasis added)).[36] Moreover, because the 2004 Final Order was entered by the district court, it surely is coercive: Trudeau may disregard the Order only upon pain of punishment for contempt, a penalty he has previously received. *See* 2004 Final Order ¶ 8 (noting that the district court had previously found Trudeau in contempt for violating the July 2003 stipulated preliminary injunction); *see also id*. ¶ 7 (declaring that "the provisions of this Order are binding upon Defendants"); *id*. at 29 (providing that the district court "shall retain jurisdiction over this matter for purposes of . . . enforcement of this Order").

2. Trudeau's second contention is that the press release erroneously implies that the settlement represents a judicial finding that Trudeau was a habitual false advertiser. In particular, he focuses on the release's third paragraph:

> "This ban is meant to shut down an infomercial empire that has misled American consumers for years," said Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection. "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences."

---

[36]*Compare* 2004 Final Order at 8 (declaring that Trudeau is permanently "enjoined" from disseminating specified representations in infomercials), *with* WEBSTER'S NEW INTERNATIONAL DICTIONARY 754 (defining "enjoin" as "to prohibit . . . by judicial order").

App. 51 at ¶ 3.  Trudeau does not contend that the FTC or its officials acted improperly by asserting their own views.  His contention is that "a reader could reach no conclusion other than that *the court had found* Trudeau to have engaged in false advertising, and had imposed a 'ban' as punishment." Appellant's Br. 9 (emphasis added).

That contention is wrong.  By its use of quotation marks, the paragraph makes clear that the statement is that of Acting Director Parnes -- not that of the district court.  Moreover, by the time a reader gets to that quotation, he or she has already read the italicized subtitle of the release, which states:  "*Trudeau Settles Claims with Coral Calcium Supreme and Biotape*" (underlining added), as well as the release's first paragraph, which states that Trudeau "agreed" to the provisions of the Order to "settle" the FTC's charges.  App. 51 at ¶ 1.  And before concluding the release, the reader will also see the bolded note stating:  "**Note**:  This stipulated final order is *for settlement purposes only* and does not constitute an admission by the defendants of a law violation."  *Id*. at 52 (italics added).  Given this context, no reasonable reader could conclude that the Acting Director's Parnes' assertions reflected a "judicial finding." Appellant's Br. 6.

3. Trudeau next contends that the press release inaccurately characterizes the $2 million that he must pay under the order. Here, he focuses on paragraph two of the release, which states:

>Trudeau is paying $500,000 in cash and transferring residential property . . . and a luxury automobile to the Commission to satisfy the $2 million *monetary judgment against him*[.]

Appellant's Br. 9 (quoting App. 51 at ¶ 2) (emphasis added by Appellant).  According to Trudeau:  "[T]he fund was part of a

voluntary settlement agreement and not a 'judgment' at all. Nevertheless, the news release overtly characterizes it as a fine, and thus misleads readers into the belief that it was imposed by the court as a punishment for false advertising." Appellant's Br. 9-10.

Trudeau's contention suffers from three fatal defects. Contrary to his premise, the $2 million fund is in fact part of a "judgment" against him, as the 2004 Final Order expressly states. *See* 2004 Final Order at 16 (entering "Judgment for equitable monetary relief in the amount of two million dollars"). Contrary to his assertion, the news release nowhere, overtly or otherwise, characterizes the $2 million as a "fine." And contrary to his implication, the press release makes clear, repeatedly, that the fund was part of a voluntary settlement agreement. *See, e.g.*, App. 51 at subtitle ("*Trudeau Settles Claims*"); *id*. at ¶ 1 (announcing an FTC "settlement with Kevin Trudeau"); *id*. (stating that "Trudeau agreed . . . to pay the FTC $2 million to settle charges").

4. Finally, Trudeau asserts that the press release is misleading because it fails to expressly state, as the 2004 Final Order did, that there had been "no findings or admissions of wrongdoing or liability" with respect to Trudeau. 2004 Final Order ¶ 8. As we said above, we do not believe that a reasonable reader could construe the press release as suggesting that there had been such a finding; accordingly, an express disavowal was unnecessary to prevent such a reader from being misled. In any event, the online version of the release -- which is the version upon which Trudeau focuses his attention[37] --

---

[37]*See, e.g.*, Appellant's Br. 7, 44 (complaining of assertedly false information on the FTC's "informational web page").

contains a link to the 2004 Final Order, prominently displayed in bold at the top-right corner of the webpage. The link permits any interested reader to compare the release with the order itself, including its disavowal of a judicial finding. *See* 2004 Final Order ¶ 8. With the terms of the order just two mouseclicks away, any potential misreading of the release can easily be averted.

## D

The district court found that "the differences between the press release and the stipulated order are minor or illusory." *Trudeau v. FTC*, 384 F. Supp. 2d at 296. We agree. Contrary to Trudeau's contention, this is not a case in which only "a highly skilled jurist or an FTC staff member, carefully parsing the language of the publication," would not be misled. Reply Br. 22. Rather, this is a case in which no reasonable person could misinterpret the press release in the ways that Trudeau suggests. Accordingly, Trudeau's complaint is legally insufficient to state a claim.

## V

For the foregoing reasons, we affirm the judgment of the district court dismissing Trudeau's complaint for failure to state a claim upon which relief can be granted.

*Affirmed.*