# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 5, 2024          Decided July 9, 2024

No. 23-5175

DELAWARE VALLEY REGIONAL CENTER, LLC, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ET
AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-00119)

*Kathleen R. Hartnett* argued the cause for appellants. With
her on the briefs were *Patrick J. Hayden* and *Adam M. Katz.*

*Aaron S. Goldsmith*, Senior Litigation Counsel, U.S.
Department of Justice, argued the cause for appellees. With
him on the brief were *Brian M. Boynton*, Principal Deputy
Assistant Attorney General, and *Glenn M. Girdharry*, Assistant
Director.

Before: PILLARD, WALKER and PAN, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* PAN.

PAN, *Circuit Judge*: Three Chinese individuals (collectively, the "Investor Appellants") invested in a project to improve Philadelphia's transit infrastructure as part of an effort to obtain EB-5 visas — *i.e.*, visas for foreign investors who create jobs in the United States. *See* 8 U.S.C. § 1153(b)(5). United States Citizenship and Immigration Services ("USCIS") found the Investor Appellants eligible for EB-5 visas and approved their visa applications. But the EB-5 visa program is oversubscribed, so the Investor Appellants are in a "line" waiting for visas to become available.

In 2022, Congress changed the eligibility requirements for EB-5 visas in the EB-5 Reform and Integrity Act of 2022 ("RIA"). *See* Pub. L. 117-103, § 102, 136 Stat. 49, 1070 (2022) (codified at 8 U.S.C. § 1153(b)(5)). The RIA created a new category of "reserved" EB-5 visas for foreigners who invest in "infrastructure projects" that meet certain requirements. *See* 8 U.S.C. § 1153(b)(5)(B)(i)(I)(cc). After the passage of the RIA, USCIS stated that it would determine whether a visa applicant's investment is in a qualified "infrastructure project" at the time that USCIS adjudicates the "project application." That created uncertainty for the Investor Appellants. They believed that they should be deemed eligible for the new "reserved" visas based on their past investments in infrastructure; and they interpreted USCIS's statements about prospectively adjudicating "project applications" as precluding consideration of investments in infrastructure projects that already had been approved by USCIS under the prior regulatory regime.

The Investor Appellants and their project sponsors (the "Project Appellants") sued the Department of Homeland Security and USCIS, arguing that previous investments in already-approved infrastructure-focused projects should be eligible for reserved EB-5 visas under the RIA. The district

court dismissed the complaint, ruling that the government had taken no final agency action under the RIA that may be challenged at this time. Because we agree that the arguments made by Appellants are premature, we affirm.

## I.

### A.

As part of the Immigration Act of 1990, Congress established the EB-5 immigrant-investor visa program. *See* Pub. L. No. 101-649, § 121, 104 Stat. 4978, 4987 (1990) (codified at 8 U.S.C. § 1153(b)(5)). The EB-5 program is so named because it is the "fifth employment-based visa category available to foreign nationals" under the Immigration and Nationality Act. *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374 (D.C. Cir. 2020) (first citing 8 U.S.C. § 1101 *et seq.*; then citing *id.* § 1153(b)(5)). EB-5 visas are allotted to immigrants "who have invested capital in a new commercial enterprise that will benefit the United States economy and create full-time employment for ten citizens or non-citizens with work authorization." *Id.* (internal quotation marks and alterations omitted) (quoting 8 U.S.C. § 1153(b)(5)(A)). As explained in more detail below, an immigrant can satisfy the EB-5 employment-creation requirement by creating jobs indirectly through USCIS's Regional Center Program. *See* Immigrant Investor Pilot Program, Interim Rule, 58 Fed. Reg. 44606, 44607 (Aug. 24, 1993) (noting that "immigrants participating in the [Regional Center] program may credit jobs they create indirectly").

The EB-5 visa process is administered by USCIS and the State Department. USCIS processes and approves the visa petitions — *i.e.*, it assesses whether petitioners qualify for the requested visa. *See* 8 C.F.R. §§ 100.1, 103.2, 254.2(a). The State Department determines how many visas are available and

allocates visas to approved applicants. *See* 22 C.F.R. §§ 42.41, 42.51. Moreover, the State Department limits the number of visas that may be issued to nationals from each foreign country. *See* 8 U.S.C. § 1152(a)(2) (Visas available to applicants from any individual country will "not exceed 7 percent" of the total number of family-sponsored and employment-based visas made available in that fiscal year.). Once an immigrant investor obtains an EB-5 visa, they may apply for a two-year conditional lawful-permanent-resident status. *Id.* § 1186b(a); 8 C.F.R. §§ 216.1, 245.2. At the end of the conditional period, the investor may file a petition to become a permanent resident in the United States. *See id.* § 1186b(c), (d); 8 C.F.R. § 216.6.

Because the EB-5 visa program is oversubscribed, an immigrant investor whose EB-5 petition is approved by USCIS must wait in a virtual "line" until a visa becomes available. *See Da Costa v. Immigr. Inv. Program Off.,* 80 F.4th 330, 336 (D.C. Cir. 2023). The EB-5 process is especially lengthy for investors from China — due to the high number of Chinese applicants, many of them wait years for an available visa. For example, in April 2024, visas were finally becoming available for approved EB-5 petitioners from China who had filed their petitions in December 2015. USCIS, *When to File Your Adjustment of Status Application for Family-Sponsored or Employment-Based Preference Visas: April 2024,* https://perma.cc/YE45-U5AW (last visited July 3, 2024) ("April 2024 EB-5 Visa Bulletin Charts").

In 1992, Congress created a pilot program for obtaining EB-5 visas that is now called the Regional Center Program. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (1992). The program allows immigrant investors to satisfy the EB-5 employment-creation requirement by investing through

regional centers, which direct the funds to job-creation projects. Regional centers are USCIS-approved business entities that work in specified geographic areas to facilitate the pooling of EB-5 investments. 8 C.F.R. § 204.6(m)(3)(i) (A regional center must submit a proposal which "describes how [it] focuses on a geographical region of the United States, and how it will promote economic growth."); *Doe v. McAleenan*, 929 F.3d 478, 480 (7th Cir. 2019) ("Regional centers are essentially clearinghouses for eligible investment opportunities."). As of 2023, there were 640 approved regional centers in the United States. USCIS, *Approved EB-5 Immigrant Investor Regional Centers*, https://perma.cc/PUM2-TWHL (last visited July 3, 2024). And as of 2021, over ninety percent of EB-5 applicants invested in the United States through a regional center. IIUSA, *IIUSA Data Analysis: Impact of the Lapse of the EB-5 Regional Center Program on Investors, Investments and Job Creation*, https://perma.cc/9LNS-QNZS (Aug. 20, 2021).

Before the RIA was enacted, an EB-5 applicant participating in the Regional Center Program could invest either $1 million in the United States generally or $500,000 in a "targeted employment area" to qualify for an EB-5 visa. *See* 8 U.S.C. § 1153(b)(5)(C) (2006); *see also Zhang v. USCIS*, 978 F.3d 1314, 1316 (D.C. Cir. 2020). A "targeted employment area" was defined as a rural area or an area experiencing high unemployment. *See* 8 U.S.C. § 1153(b)(5)(B)(ii) (2006). Either type of investment could be made through a regional center. *See Regional Center Designation, Reporting, Amendments, and Termination*, USCIS Policy Manual (2021), Vol. 6, Part G, Ch. 3, https://perma.cc/MZA2-XCEP.

Prior to the RIA, USCIS allowed visa applicants to submit optional business plans that described their prospective proposals for job creation. *See* 8 C.F.R. § 204.6(j)(4)(i) (noting

that evidence of job creation can be shown through "a comprehensive business plan"). As part of the Regional Center Program, USCIS also allowed regional centers to submit business plans that outlined the job-creation potential of their sponsored investment projects. *See* USCIS, *Policy Memorandum*, *EB-5 Adjudications Policy* at 14 n.2, 23, https://perma.cc/U9PW-G5AE (May 30, 2013) ("Policy Memorandum"). If USCIS approved a regional center's business plan, individual investors who petitioned for EB-5 visas after investing in the project described in the business plan enjoyed a streamlined application process: They could append the approved business plan to their visa applications and receive "deference" from USCIS in its assessment of whether the petitioners satisfied the job-creation requirement. *See id.* at 21, 23; *see also* J.A. 43 (describing Delaware Valley Regional Center's application and business plan). This informal practice allowed USCIS to examine and approve a job-creation proposal just one time for each regional-center project, rather than repeating the analysis for each visa petitioner who invested in that project. *See* Policy Memorandum at 23 ("This policy of deference is an important part of ensuring predictability for EB-5 investors and commercial enterprises . . . , and also conserves scarce agency resources, which should not ordinarily be used to duplicate previous adjudicative efforts.").

In March 2022, President Biden signed into law the EB-5 Reform and Integrity Act of 2022. The RIA retains the Regional Center Program and still enables EB-5 petitioners to "pool[] their investments" together through a regional center, but it imposes new restrictions and requirements on regional centers. *See* 8 U.S.C. § 1153(b)(5)(E)(i); *see also, e.g.*, *id.* § 1153 (b)(5)(G) (requiring annual statements from regional centers), (b)(5)(H)(ii)(II) (prohibiting foreign government involvement in regional centers).

As relevant here, the RIA created a new type of EB-5 visa — a "reserved visa" — for investors who make certain types of investments. 8 U.S.C. § 1153(b)(5)(B)(i)(I).[1] The reserved visas are set aside from the general pool of EB-5 visas. In particular, the RIA provides that two percent of EB-5 visas will be "reserved" for "qualified immigrants who invest in infrastructure projects." *Id.* § 1153(b)(5)(B)(i)(I)(cc). Because there currently is no backlog for reserved visas, investors who qualify for reserved visas effectively have priority over others who are in the regular line for EB-5 visas. For example, qualifying Chinese investors could receive reserved EB-5 visas as soon as their visa applications are approved, even though Chinese applicants in line for non-reserved EB-5 visas currently face a nine-year backlog. *See* April 2024 EB-5 Visa Bulletin Charts (noting that non-reserved EB-5 visas are currently available for Chinese investors with a priority date from December 2015, whereas there is no line for reserved infrastructure-project visas, which are "current").

The RIA provides a statutory definition of the type of "infrastructure project" that qualifies an investor for a reserved

---

[1]     The "reserved visa" provision states:

> Of the visas made available under this paragraph in each fiscal year—
> (aa) 20 percent shall be reserved for qualified immigrants who invest in a rural area;
> (bb) 10 percent shall be reserved for qualified immigrants who invest in an area designated by the Secretary of Homeland Security under clause (ii) as a high unemployment area; and
> (cc) 2 percent shall be reserved for qualified immigrants who invest in infrastructure projects.

8 U.S.C. § 1153(b)(5)(B)(i)(I).

visa. 8 U.S.C. § 1153(b)(5)(D)(iv). A qualified "infrastructure project" must be presented to USCIS in the form of a "filed or approved business plan." *Id.*; *see also id.* § 1153(b)(5)(F)(i)(I) (requiring, as part of a regional-center application, "a comprehensive business plan for a specific capital investment project"). Furthermore, (1) the project must be administered by a governmental entity, (2) the governmental entity must contract with a regional center to receive capital investment under the Regional Center Program, and (3) the project must use the capital investments to maintain, improve, or construct a public works project. *Id.* § 1153(b)(5)(D)(iv).[2]

In addition, the RIA raised the minimum qualifying investment amounts. Whereas the statute and accompanying regulations previously required an investment of $1,000,000 for the general EB-5 program or $500,000 for targeted employment areas, *see* 8 U.S.C. § 1153(b)(5)(C) (2006); 8 C.F.R. § 204.6(f) (2016), investor applicants now must invest $1,050,000 to qualify for EB-5 visas generally, or $800,000 in targeted employment areas or statutorily defined infrastructure

---

[2]     Subparagraph (D)(iv) provides:

> The term "infrastructure project" means a capital investment project in a filed or approved business plan, which is administered by a governmental entity (such as a Federal, State, or local agency or authority) that is the job-creating entity contracting with a regional center or new commercial enterprise to receive capital investment under the regional center program described in subparagraph (E) from alien investors or the new commercial enterprise as financing for maintaining, improving, or constructing a public works project.

8 U.S.C. § 1153(b)(5)(D)(iv).

projects, 8 U.S.C. § 1153(b)(5)(C). The RIA also provides for automatic inflation-based adjustments of these amounts every five years and requires the Secretary of Homeland Security to publish the updated amounts in the Federal Register. *See id.* § 1153(b)(5)(C)(iii).

Under the post-RIA regulatory regime, regional centers must submit two separate forms, the latter of which requires a business plan. First, an "entity seeking regional center designation must apply for such designation" using Form I-956. USCIS, *EB-5 Questions and Answers*, https://perma.cc/Z5SY-MQFB (Apr. 3, 2024). Second, after USCIS approves the regional center's designation, the regional center must apply to USCIS for approval of each project that it intends to sponsor by filing a Form I-956F. *Id.* (explaining that Form I-956F must be filed "for each particular investment offering through a new commercial enterprise that the regional center intends to sponsor"); USCIS, *Instructions for Form I-956F, Application for Approval of an Investment in a Commercial Enterprise* at 1, https://perma.cc/C9XK-A2WR (Apr. 1, 2024) ("Form I-956F Instructions") (noting that Form I-956F must be submitted to "request approval of [the] project"). After a regional center has filed a Form I-956F, individual investors may file petitions to receive visas based on their investments in the project referenced in the Form I-956F. *See* USCIS, *EB-5 Questions and Answers*, https://perma.cc/Z5SY-MQFB (Apr. 3, 2024).

**B.**

After the enactment of the RIA, USCIS explained in two forums — a Q&A and a policy manual — how it would administer EB-5 visas under the new statute. First, in April 2022, USCIS posted on its website a set of "EB-5 Questions and Answers" (the "Q&A") related to the RIA. One question

and answer discussed the definition of an "infrastructure project" under the new law:

> [Q:] How can I request that USCIS determine whether a specific capital investment project meets the definition of "infrastructure project"?
>
> [A:] *USCIS will determine if the investment is in a qualified infrastructure project when adjudicating the regional center's project application.*
>
> An infrastructure project is a capital investment project in a filed or approved business plan, which is administered by a governmental entity (such as a federal, state, or local agency or authority) that is the job-creating entity contracting with a regional center or new commercial enterprise to receive capital investment under the Regional Center Program from alien investors or the new commercial enterprise as financing for maintaining, improving, or constructing a public works project.

J.A. 112 (emphasis added). The posted answer largely quotes the definition of "infrastructure project" found in the RIA; but it also includes a statement that USCIS will determine whether a project is a qualified "infrastructure project" when it adjudicates the regional center's "project application." The term "project application" refers to the Form I-956F that a regional center must submit to USCIS to seek approval of an EB-5-eligible project. *See* Form I-956F Instructions at 1.

Thereafter, in October 2022, USCIS published an update to its Policy Manual.[3] The relevant portion of the Policy Manual states:

> For regional center-based petitions filed on or after May 14, 2022, investors may qualify for the reduced investment amount by investing in an infrastructure project. These projects are ones:
>
> - That are administered by a governmental entity (such as a federal, state, or local agency or authority);
> - Where the governmental entity, which serves as the job-creating entity, contracts with a regional center or new commercial enterprise to receive capital investment under the regional center program from investors or the new commercial enterprise; and
> - That involve financing for maintaining, improving, or constructing a public works project.
>
> *USCIS determines whether a project meets the definition of infrastructure project during adjudication of the Form I-956F.* A standalone

---

[3] The Policy Manual is USCIS's "centralized online repository for USCIS' immigration policies." USCIS, *Policy Manual*, https://perma.cc/S52P-CUQR (last visited July 3, 2024). The Policy Manual "contains the official policies of USCIS" and "is to be followed by all USCIS officers in the performance of their duties." *Id.* The Manual is available to the public on USCIS's website.

> investor cannot establish eligibility through an infrastructure project.

J.A. 64 (emphasis added). The Policy Manual largely quotes the definition of "infrastructure project" under the statute; but it adds a statement that USCIS will determine whether a project constitutes an "infrastructure project" at the time that the agency adjudicates a project-approval application — *i.e.*, the Form I-956F.

## C.

Appellants are business entities and individual investors who participate in the Regional Center Program. Delaware Valley Regional Center, LLC ("DVRC") is a Philadelphia-based regional center that received USCIS approval in 2014 to "direct foreign investment into regionally significant development projects in the Delaware Valley metropolitan area." J.A. 13–14. DVRC has raised $623 million from foreign investors to loan to governmental entities in support of infrastructure initiatives. DVRC later received USCIS approval of a business plan for the Southeastern Pennsylvania Transportation Authority ("SEPTA") Project. That project aimed to secure investments totaling $300 million for "[m]ass transit capital improvement" in the greater Philadelphia area. *See id.* at 45. DVRC raised $239.5 million from 479 investors for the SEPTA Project; approximately 90% of the investors are Chinese nationals. Appellant DVRC SEPTA II, LP is the limited partnership that owns the SEPTA Fund — the entity organized by DVRC "to receive investor funds and, in turn, provide those funds to SEPTA." J.A. 12.

Investor Appellants Wenjun Wang, Jialun Wang, and Cuijuan Liu are three Chinese nationals who invested in the SEPTA Project. Relying on those investments, they filed pre-RIA petitions for EB-5 visas, which USCIS approved in 2017

and 2018.  Investor Appellants satisfied the pre-RIA Regional Center Program's requirements by each investing $500,000 in a targeted employment area.  Each of the Investor Appellants has waited at least five years for an EB-5 visa since the approval of his or her petition.

Appellants collectively contend that the Investor Appellants' investments in the SEPTA Project qualify them for reserved EB-5 visas under the RIA.  Appellants assert that the SEPTA Project meets all the statutory requirements to qualify as an "infrastructure project" because (1) the SEPTA Project is an "investment project in a filed or approved business plan"; (2) the SEPTA Project is "administered by a governmental entity"; (3) SEPTA contracted with DVRC, a regional center, to receive capital investment under the Regional Center Program; and (4) the SEPTA Project provides "financing" for improvements and construction for SEPTA's public transit system.  J.A. 33 (emphasis omitted) (quoting 8 U.S.C. § 1153(b)(5)(D)(iv)).  In addition, Investor Appellants claim that their investments of $500,000 apiece in the SEPTA Project should be deemed sufficient to satisfy the RIA's investment threshold.[4]  Thus, Appellants contend, the Investor Appellants

---

[4]    Investor Appellants appear to fall short of the RIA's requirement that those who seek infrastructure-project visas must invest at least $800,000 in a qualifying infrastructure project.  *See* 8 U.S.C.  § 1153(b)(5)(C)(ii).  Investor Appellants argue that they nonetheless qualify for two reasons.  First, they claim that the monetary thresholds "attach to [visa-petition] approvals, not the available visas."  Appellant Br. 58.  They therefore contend that, by investing $500,000 prior to the passage of the RIA, they each received approval of their visa petitions, which is enough to qualify them to be considered for reserved infrastructure-project visas.  *See id.* at 57 (arguing that "the [visa] petition grants noncitizens approval to stand in line for a visa").  Second, Investor Appellants assert that

have met the requirements to receive reserved infrastructure-project visas.

Appellants believe that USCIS will not approve reserved EB-5 visas for the Investor Appellants, despite their asserted eligibility for such visas. Appellants filed a complaint in the district court, arguing that USCIS's statements about the RIA in the Q&A and the Policy Manual constitute a USCIS policy that is contrary to the RIA and arbitrary and capricious. They claim that the Q&A and the Policy Manual "adopt[] an unlawful policy" because USCIS has stated that it will make infrastructure-project determinations only when a business plan is filed. J.A. 11. Such a policy, according to Appellants, excludes previously approved business plans like theirs from ever being evaluated for infrastructure-project eligibility under the RIA, and thus deprives the Investor Appellants of any opportunity to secure reserved EB-5 visas.

The district court granted the government's motion to dismiss, concluding that "what Plaintiffs challenge is not final agency action under the [Administrative Procedure Act ("APA")]." J.A. 88. The court held that both the Q&A and the Policy Manual failed the test for final agency action because neither "marks the consummation of USCIS's decision-making policy in the context of the investor visa statute," *id*. at 97, nor "ha[s] any actual legal effect," *id*. at 99. Instead, the court concluded that the agency's statements "merely repeat[] what the [RIA] already requires." *Id*. at 101. Appellants filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

---

the $500,000 and $800,000 investments are essentially "of identical size" because the increased threshold in the RIA is simply meant to account for inflation. *See id.* at 58. We do not reach the merits of whether Investor Appellants qualify for infrastructure-project visas under the RIA and therefore do not address these arguments.

15

**II.**

The district court dismissed Appellants' complaint for lack of subject-matter jurisdiction, reasoning that Appellants had not identified any final agency action under the APA. But the question of finality is a threshold question for suit under the APA: It does not alter federal-court jurisdiction. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006) (explaining that "the APA neither confers nor restricts jurisdiction"). Instead, the finality inquiry operates as a gateway to whether Appellants can state a claim under the APA. *Id.* ("If there was no final agency action, there is no doubt that appellant would lack a cause of action under the APA." (cleaned up)). Thus, although the district court erred in dismissing the complaint for lack of jurisdiction, if the complaint fails to state a claim on which relief can be granted we can affirm the judgment of dismissal under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 187. We review de novo whether Appellants stated a claim.

**III.**

After the enactment of the RIA, USCIS took steps to inform the public about how the agency would administer the process of reviewing petitions for reserved EB-5 visas. In the Q&A and the Policy Manual, the agency stated that it would determine whether an investment project is an EB-5-eligible "infrastructure project" upon the filing of an application. Appellants, however, believe that the agency did more. According to Appellants, USCIS's actions have foreclosed the possibility that business plans approved before the passage of the RIA — like the business plan for the SEPTA Project — could ever be considered for reserved-visa eligibility. Appellants argue that the agency's refusal to consider pre-RIA-

approved business plans is contrary to the RIA.  *See* 8 U.S.C. § 1153(b)(5)(D)(iv).

In our view, Appellants misunderstand the agency statements at issue.  The Q&A and the Policy Manual merely make explicit that those who seek to demonstrate their eligibility for infrastructure-project visas must do so by filing an application.  Accordingly, the statements in the Q&A and the Policy Manual do not constitute final agency action.  Moreover, as government counsel confirmed at oral argument, Investor Appellants are not precluded from applying for reserved EB-5 visas.

## A.

Under the APA, courts may review only "final agency action."  5 U.S.C. § 704.  To be "final," an agency action must meet two conditions:  It must (1) "mark the consummation of the agency's decisionmaking process"; and (2) determine "rights or obligations" or impose "legal consequences."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  An agency action does not impose binding duties — and therefore causes no "legal consequences" — when it "merely clarifies . . . existing duties" under a statute.  *Catawba Cnty. v. EPA*, 571 F.3d 20, 34 (D.C. Cir. 2009).

The RIA created a new category of reserved infrastructure-project visas and charged USCIS with assessing who qualifies for those visas.  That assessment requires the agency to determine whether a visa applicant has invested in a qualified "infrastructure project" under the statute.  *See* 8 U.S.C. § 1153(b)(5)(B)(iii)(I) ("The Secretary of Homeland Security shall determine whether a specific capital investment project meets the definition of 'infrastructure project' set forth [under the statute].").  An immigrant investor who seeks a reserved infrastructure-project visa must work with a regional center to

apply in two steps: First, the regional center applies for its proposed project to receive qualified "infrastructure project" status by filing a Form I-956F; and second, the individual immigrant applies for a reserved visa, based on an investment in the qualified "infrastructure project."

In the challenged statements, USCIS explained how it would administer the first step of the process — *i.e.*, the designation of an investment project as a qualified "infrastructure project." In the Q&A that was posted on its website, USCIS stated that it "will determine if the investment is in a qualified infrastructure project when adjudicating the regional center's project application." J.A. 112. Later, in the Policy Manual, USCIS explained that it will "determine[] whether a project meets the definition of infrastructure project during adjudication of the Form I-956F," *i.e.*, the project-approval application. J.A. 64. Both statements made explicit an existing requirement: that parties who wish to qualify for reserved EB-5 visas must demonstrate their eligibility to the agency. The existing duty to demonstrate such eligibility for a requested benefit extends to regional centers that seek to sponsor EB-5 applicants' "infrastructure project[s]," as well as individual immigrants who seek reserved visas.

The statute mandates that the agency "shall determine" if a capital-investment project is a qualified "infrastructure project," 8 U.S.C. § 1153(b)(5)(B)(iii)(I), and such a determination cannot be made without information from the sponsoring regional center, which presumptively must be provided in an application. Under governing regulations, USCIS routinely assesses qualifications for immigration benefits at the time of application. *See* 8 C.F.R. § 103.2(b) (requiring applicant to "establish that he or she is eligible for the requested benefit at the time of filing the benefit request"). The USCIS statements in the Q&A and the Policy Manual thus

do not impose any new "concrete consequences" on Appellants when considered within the context of "the specific statute[] and regulations that govern" this case. *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019). Consistent with what is plainly contemplated by the RIA, USCIS stated only that it requires regional centers and visa applicants to submit forms that demonstrate their eligibility for a new benefit. Thus, the statements in the Q&A and the Policy Manual merely "clarif[y] existing duties" and do not constitute "final agency action." *Catawba Cnty.*, 571 F.3d at 34.

Appellants argue that USCIS has issued an interpretation of the RIA that is contrary to law. Specifically, they infer from USCIS's statements in the Q&A and the Policy Manual that the agency has categorically excluded pre-RIA-approved business plans from consideration for infrastructure-project status. *See* J.A. 12–13 (asserting that "the Policy means that Defendants will *never* make determinations regarding already-'approved' projects and thus never will determine formally that the SEPTA Project is an 'infrastructure project'"). That decision, according to Appellants, is contrary to the text of the RIA, which requires the Secretary of Homeland Security to determine whether projects in "filed or approved business plans" are "infrastructure project[s]." *See* 8 U.S.C. § 1153(b)(5)(D)(iv). Appellants contend that their SEPTA Project business plan was previously "approved" when they applied for regular EB-5 visas, and that the prior approval of their business plan makes them eligible for reserved visas.

Appellants have not established that USCIS has adopted that interpretation of the RIA. Nothing in the challenged statements precludes a previously approved EB-5 petitioner from filing a new petition for a reserved visa, based on an infrastructure investment that complied with pre-RIA requirements. DVRC can file a Form I-956F to seek status as

a qualified "infrastructure project" for the SEPTA Project, and that application can cross-reference the previously approved business plan. *See* Response Br. 63 ("[T]he [Q&A] merely states that USCIS will determine whether an investment is a qualified infrastructure [project] 'when adjudicating' the Form I-956F application, the form that a regional center submits to USCIS to make this determination."). At oral argument, USCIS confirmed that this path is open to DVRC, and that "the project application might be approved." Oral Arg. Tr. at 41:2-3.[5] Moreover, upon approval of DVRC's application for designation of the SEPTA Project as a qualified "infrastructure project," we see nothing that prevents the individual Investor Appellants from applying for reserved EB-5 visas based on their investments in the SEPTA Project — even if those investments also were previously approved.

In sum, we understand USCIS's statements in the Q&A and the Policy Manual merely to articulate the normal process for seeking an immigration benefit: Parties who seek to comply with the requirements for reserved visas under the RIA must establish their eligibility in applications filed with USCIS. *See* 8 C.F.R. § 103.2(b). This means that a regional center must apply for its proposed project to receive qualified "infrastructure project" status by filing a Form I-956F; and

---

[5] *See* Oral Arg. Tr. at 39:15–19 ("[T]here is no reason the appellant in this case, DVRC, the regional center, cannot file a Form I-956F today. We're not saying that they are barred from doing so simply because they were designated under prior law. They can file it today."); *see also id.* at 39:21–40:3 (explaining that a regional center with a previously-approved business plan could check the "infrastructure project" box on page 6 of the Form I-956F and attach the already-approved "business plan" thereto); *see also* USCIS, *Form I-956F, Application for Approval of an Investment in a Commercial Enterprise* at 6, https://perma.cc/6C8X-73MW (last visited July 3, 2024).

individual immigrants must then apply for a reserved visa, based on their investment in that qualified "infrastructure project." If either type of application is rejected, the unsuccessful applicant is entitled to appeal the denial within USCIS's internal procedures, and the agency record presumably will include the reasons for the denial. Thereafter, an unsuccessful applicant may seek judicial review of that final agency action in this court. *See* 8 U.S.C. § 1153(b)(5)(P)(i), (ii). Appellants must follow that well-established procedure, rather than anticipate that their applications will be rejected based on an unfavorable interpretation of the RIA. Appellants have not established that anything in USCIS's policies prevents them from filing applications for infrastructure-project designation and reserved EB-5 visas, in reliance on the SEPTA Project and prior investments in that project. Appellants will have the opportunity to litigate the issues they seek to raise in this appeal if it turns out that the agency's policy is, in fact, what they believe it to be.

\* \* \*

In the case before us, Appellants challenge statements made by USCIS in the Q&A posted on its website and in the Policy Manual that was amended after the RIA was enacted. But the statements do not carry the weight that Appellants assign to them — they do not announce the automatic denial of infrastructure-project eligibility for all pre-RIA-approved business plans. Because USCIS "tread[s] no new ground" in the challenged statements, *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004), the agency took no final agency action. We therefore affirm the district court's dismissal of the claims for lack of finality under the APA.

*So ordered.*